## DeFOOR v. STEPHENS & LASTINGER.

1. A landlord who leases in writing a building for the conduct of a particular business, and verbally consents for his lessee to associate with him a partner in the business, is liable to the partnership for damages caused to their business by the landlord's affirmative acts, willfully done, in violation of the terms of lease, and with intent to injure the partners in their business.
2. The evidence authorized the verdict.

Argued June 7,—Decided December 23, 1909.

Action for damages.   Before Judge Pendleton.   Fulton superior court.   October 13, 1908.

*Joseph W. & John D. Humphries* and *A. H. Davis,* for plaintiff in error.   *James L. Key,* contra.

EVANS, P. J.   Stephens and Lastinger, alleging themselves to be a firm composed of Pat Stephens and George Lastinger, brought an action of damages against John C. DeFoor, making substantially the following case in their petition: The defendant leased part of a room to Pat Stephens to be used as a barber-shop.   In the rear of the barber-shop the lessor operated a pool-room, access to which was obtained by passing through the barber-shop from the abutting street.   The entrance from the barber-shop to the pool-room was through swinging doors in the rear of the barber-shop.   On the right-hand corner of the barber-shop was a cigar-stand, which added to the attractiveness of the place, and did not obstruct the light from the barber-shop.   The pool-room attracted noisy and uproarious crowds, who engaged in loud talk, swearing, betting, laughing, and disorder of all kinds.   The manner in which it was conducted was alleged to be a nuisance.   The swinging doors between the barber-shop and the pool-room were so constructed that they closed

automatically and remained closed all the time, except when some one was passing through them; and when kept shut the doors served to keep out the noise and din from the defendant's pool-room, and the customers of the shop were not disturbed, but when the doors were left open the noise and din of the pool-room had the effect to disturb and drive off the customers of the barber-shop. On August 28, 1904, George Lastinger became a partner with Stephens in the barber-shop business, which partnership has continued until the time of the filing of the suit, and Lastinger bought and now owns one half of the lease under the defendant, with his knowledge and consent. The swinging doors between the pool-room and the barber-shop were kept closed until May 29, 1905, when these doors were propped open by the defendant, maliciously, and without any reasonable cause, and with the distinct purpose of injuring the plaintiffs in their business as barbers, driving customers away from their shop, and forcing them to give up their lease on the premises. The plaintiffs put the defendant on notice that his conduct was injuring and would injure them in their business; and defendant stubbornly refused to have the doors closed or to permit plaintiffs to close them. At the time the defendant propped open the doors the gross earnings of the shop were $125 per week, but because of the willful and malicious conduct of the defendant in keeping the doors propped open he had driven off the trade of the shop and decreased its income to $80 per week, and the gross earnings for the remainder of the term will not amount to more than $50 per week. On January 4, 1905, the defendant removed the cigar-stand and put in the same place a candy-stand, in the construction of which the light from one window in the shop was cut off; the cigar-stand as maintained at the time of the lease covered a space eight feet wide, twelve feet long, and four feet high, and did not obstruct the light from the window, but the construction of the candy-stand did obstruct the light, and depreciated the rental value of the barber-shop to the extent of half. A copy of the lease from DeFoor to Stephens was attached. It contained a stipulation that the lessee agreed "not to sublet the premises, or any part thereof, without the written consent of said John C. DeFoor;" that the "lessee agrees to not interfere or molest the cigar-stand now located in the front of the barber-shop, or to interfere with or molest the pool-room located in the rear of the barber-shop; to leave the passage open from the

barber-shop to the pool-room; this lease becomes void when either business is molested." This lease was dated January 1, 1904, and was to continue for three years. The plaintiffs prayed to recover two thousand dollars as damages against the defendant. The defendant demurred generally and specially, and the demurrer was overruled. A verdict was rendered in favor of the plaintiffs for three hundred dollars. A motion for new trial was overruled, and the defendant excepted to both rulings.

As we construe the petition, the plaintiffs are seeking to recover damages resulting to their business from certain acts of the defendant, alleged to be wrongful and done with malicious intent. The action sounds in tort, and is not for breach of contract. A tort may be either a direct invasion of some legal right of the individual, or the violation of some private obligation, by which special damage accrues to the individual. Civil Code, § 3807. In the analysis of the plaintiffs' case the first factor to be settled is the right of the partnership to conduct the business in the house leased to one of the partners, where the landlord consented to the lessee's associating a partner in the business with him. Under the Civil Code, § 3115, a leasing of real estate for less than five years passes no estate out of the landlord; the tenant has only a usufruct, and he can neither sublet the premises, convey his usufructuary interest, nor assign his lease, without the landlord's consent. *Hudson* v. *Stewart,* 110 *Ga.* 37 (35 S. E. 178). The lease contract contained a stipulation against subletting without the landlord's written consent. It is not contended that the tenant made a written assignment of the lease or a part thereof to his partner, but that his partner bought from him a half interest in the lease, and became associated with him in the business, with the knowledge and consent of the landlord. The lessee's association of a third person with himself as a partner is not an assignment of the lease: 18 Am. & Eng. Enc. Law (2d ed.), 657. The incoming partner may not have a legal interest in the lease, because it was not formally assigned to him by the tenant with the landlord's consent; but as he was on the premises engaged in the business with the landlord's tenant, with the landlord's knowledge and consent, he was not a trespasser. He was at least a licensee whose rights as such the landlord was bound to respect. The association of the lessee's partner in business with himself, with the landlord's verbal consent,

can not give grounds to the landlord for treating the lease as forfeited. It has been held that permitting a third person to enter into the joint occupancy of the premises with the lessee is not a breach of a covenant against subletting. 18 Am. & Eng. Enc. Law (2d ed.), 681. When the landlord consented for his tenant and the incoming partner to jointly conduct the business for which the premises were rented, he would be liable for a malicious interference with the partnership business. And if damage ensued from such malicious interference with the partnership business, the right of action was in the partners whose business was injuriously affected.

But it is said that the only acts of the landlord claimed to be productive of damage are alleged breaches of covenants of his lease contract, and that he is not liable to the partnership therefor, for lack of privity. If the suit were for a breach of the contract, this contention would unquestionably be sound. But the action is for a willful and malicious interference with the plaintiffs' business, which the landlord expressly consented that the plaintiffs might carry on under the tenant's lease. The tenant is lawfully on the premises by virtue of the lease contract, and the consent of the landlord to his tenant's taking in a partner to carry on the business for which the premises were leased necessarily implied that the business was to be conducted with reference to the provisions of the lease. Having consented for the partnership to conduct the business on the premises which he had leased to one of them, the landlord can not willfully and maliciously do some affirmative act in violation of his lease contract, to the injury of the partnership business, without rendering himself accountable for the damages proximately caused by such conduct.

The court construed the clause of the lease contract relating to a passageway through the barber-shop to mean that the lessee was to keep open a passageway from the street through the barber-shop into the pool-room; but that the lease did not by its terms require that the doors shall always be kept open; but that a passageway should be kept open for people to pass through the barber-shop into the pool-room. The tenant was entitled to use the barber-shop with such privileges accruing from its location with reference to the pool-room at the time of the lease, when not in opposition to any of its terms. *Darnell* v. *Columbus Show-Case Co.*, 129 *Ga.* 62 (58 S. E. 631, 13 L. R. A. (N. S.) 333, 121 Am. St. R. 206). If the

communication between the barber-shop and the pool-room at the time of the lease was through swinging doors which automatically closed after a person passed through the entrance, the tenant was entitled that this condition should be maintained. The landlord would have no right to unnecessarily and willfully prop open the doors and keep them open to the injury of the tenant's business. The allegation of the petition, that the keeping of these doors open all the time by the landlord, without reasonable cause, and with the distinct purpose of injuring the plaintiffs in their business, was a nuisance was not an attempt to recover because of the maintenance of a technical nuisance, but rather a statement of the facts relative to their effect on the plaintiffs' business.

From the application of the foregoing principles to the various assignments of error as argued in the brief of counsel for the plaintiff in error, it will appear that the case was properly tried. As counsel say in their brief, the two controlling questions in the case are, whether the plaintiffs as partners could lawfully recover damages of the defendant under the facts as alleged, and whether the evidence justified a recovery. We think the suit was maintainable by the partnership, and that the evidence was ample to support the verdict. *Judgment affirmed. All the Justices concur.*