## UNIVERSALIST CONVENTION *v.* GUEST.

No. 10027. JULY 12, 1934.

*Albert E. Mayer* and *Conyers & Gowen,* for plaintiff.
*J. T. Powell* and *Krauss & Strong,* for defendant.

BELL, J. This was a suit by an indorsee of a principal note and two renewal interest coupons, secured by a deed to land. The defendant answered, pleading payment to a named corporation, which was the payee of the principal note, but not of the interest coupons in suit, although for the present it will be referred to simply as the payee. The defendant prayed for a cancellation of the notes and of the security deed. The defendant did not in specific terms allege that the payee was the agent of the plaintiff holder, but did allege that he had paid, in like manner, other interest coupons of the same series and of a previous series, after which the canceled

coupons were returned to him by the payee. He did not at any time know that the plaintiff was the holder of the notes sued on until after he had remitted the entire amount to the payee. The defendant further averred that since the plaintiff had permitted the payee to continue to collect the amounts due, it was bound by the payments made, including those intended by the defendant to cover the notes sued on. The jury found in favor of the defendant. The plaintiff excepted to the overruling of its motion for a new trial, based on the general grounds only.

The main question for determination is whether the payee was the agent of the holder to collect the notes. The facts were as follows: On August 25, 1919, B. F. Guest executed a promissory note for the sum of $350, payable to the order of Sessions Loan & Trust Company, of Marietta, Georgia, and due December 1, 1924. He also executed five interest coupons payable in like manner; and due on December 1 of each year of the loan period. To secure these notes and interest coupons he conveyed to Sessions Loan & Trust Company a tract of land in Atkinson County. The principal note as well as the interest notes were indorsed by the payee in blank and without recourse, and were delivered to Harry L. Winter Inc. soon after their execution. The name of Sessions Loan & Trust Company was later changed to Guaranteed Bond & Mortgage Company; but this fact is immaterial, and the company will be hereafter referred to either as the payee or the loan company. Harry L. Winter Inc. indorsed all of the notes in blank and without recourse, and delivered them to Universalist Convention of Vermont and Province of Quebec, a corporation. The Convention is the plaintiff in the present suit against Guest to recover on the principal note and two renewal interest coupons. It appeared from the evidence that the Convention acquired the principal note and the original interest coupons from Harry L. Winter Inc., by the indorsements last referred to, on or about September 10, 1919. During the original loan period the payee would give notice of the maturity of the interest coupons, and the defendant would remit to it accordingly. After each such payment the loan company would mail to the defendant the interest coupon marked paid. All of these payments reached the plaintiff as holder. Notwithstanding the notes had become the property of the Convention, yet at the maturity of the principal note an extension for an additional five

years was arranged by the payee in the name of Harry L. Winter Inc., and five renewal interest coupons payable to that corporation were executed by the defendant. These new interest notes were immediately indorsed in blank and without recourse by Harry L. Winter Inc., and delivered over to the Convention. By the extension agreement the principal note became due on December 1, 1929. On that date the defendant had paid three of the new interest coupons by remitting to the loan company, and had received from it the coupons marked paid, as in case of the first series. He also remitted for the renewal interest coupon which matured on December 1, 1928; but the loan company did not send him this note, as in previous instances. On December 2, 1929, he paid to the loan company the amount of the principal note and the last interest coupon. The loan company, either directly or through Harry L. Winter Inc., accounted to the Convention for all of these payments except the payment to cover the coupon which matured in 1928 and the final payment of principal and interest in 1929. The Convention, thus having failed to receive any remittance from the loan company to cover the principal note and the two interest coupons last mentioned, claims that it was entitled to recover against Guest, the maker, on these instruments. The defendant contends that the loan company was the agent of the Convention to collect the notes, and that the payments made to it constituted a satisfaction. The Convention contends that the loan company was not its agent; and that since the defendant did not require production of the obligations, payment to the loan company was at the defendant's risk.

The facts stated above were established without dispute, except as to the time when the Convention acquired the notes. One witness, a former bookkeeper for the loan company, testified that the notes were owned by Harry L. Winter Inc. during the original five-year period, but a witness for the plaintiff testified that the Convention acquired the notes in 1919; and the jury could, of course, have found this to be the fact. We refer to the witness R. L. Richmond, treasurer of the plaintiff corporation, whose evidence related also to the question of agency. The entire testimony of this witness was as follows: "The Guest mortgage, amount $350, was taken, I believe, in 1919. On September 10, we paid for it $350 and accrued interest of $.72. Interest came along with fair

regularity to the renewal date in 1924, the interest payments coming in December. The loan was renewed at that time for the same amount, and payments of interest were made to December, 1927. The last payment of interest received was on December 27, 1927. They paid me then $12, the balance of the 1927 interest, and the penalty of $1 for not paying it when due. I believe there have been no payments since. The Universalist Convention of Vermont and Province of Quebec is a corporation. I hold the position of treasurer of the plaintiff corporation—took over the assets on January 15, 1918, was elected treasurer in January, 1918, and have been such treasurer continuously since that time. The Guest mortgage was taken September 10, 1919. As to from whom it was taken, the agent for it was Harry L. Winter. He was living, I think, at Burlington, Vermont, at the time. He was connected with the H. L. Winter Inc. Later they incorporated, but at that time I think he was acting as agent for the other company, the Sessions Loan & Trust Company, of Marietta, Georgia. The Guest mortgage and notes are not in my possession; they were forwarded to Albert E. Mayer, attorney at law, 1509-1514, National Bank Building, Atlanta, Georgia. When the plaintiff corporation purchased the Guest mortgage and notes, they received from Mr. Winter the ordinary papers that come with mortgage from the south. They included in this instance the mortgage, the notes, the usual guarantee, the copy of the application for the loan, the report from special examiner of the Sessions Loan & Trust Company. We received an out-and-out assignment of the mortgage and notes from Mr. Winter, as I remember it. The guarantee that was turned over with the papers was from the Sessions Loan & Trust Company. I do not mean this was a guarantee of payment of the notes and mortgage provided the mortgagor failed to pay; it was a guarantee of title. The $350.72 which the plaintiff paid for the Guest mortgage and notes was paid through me by check to H. L. Winter. The purchase was made through me as agent for the plaintiff corporation. I had authority by the investment committee of the board to purchase the notes and mortgage. The corporation delegated to the investment committee the power to make such investments. The plaintiff corporation never did pass any specific resolution authorizing the investment committee to purchase the Guest mortgage and notes. There is not to my knowledge any book record of the dele-

gating of the power from the corporation to the investment committee to purchase this Guest mortgage and notes. I can not say that Guest was ever notified of the sale of his notes and mortgage to the plaintiff corporation. I never notified him. I am also a member of the investment committee. If any such notice in behalf of the plaintiff corporation had been sent to Guest, in all probability it would have been sent by me. I know of no other person connected with the plaintiff corporation who would notify him. I would have charge for the plaintiff of the sending of notices of the maturity of interest notes and principal notes in the present instance. I would send these notices to the Guaranteed Bond & Mortgage Company [formerly Sessions Loan & Trust Company]. Since the purchase of this mortgage the plaintiff has received interest payments. I think it was the H. L. Winter Company which sent the payments to me. I do not know from whom the H. L. Winter Company received these payments. I imagine that they came through the Sessions Loan & Trust Company. The only knowledge I have of whether H. L. Winter Inc. or H. L. Winter received the interest payments from either the Sessions Loan & Trust Company or the Guaranteed Bond & Mortgage Company is that they paid them to me, and I suppose they received them from either one or the other of these organizations. All the plaintiff ever did prior to the failing of the Guaranteed Bond & Mortgage Company to collect the Guest interest or principal notes was merely to notify the Guaranteed Bond & Mortgage Company that we had not received the interest, and making inquiry as to the prospects of future collections. The plaintiff has never had any correspondence with the defendant whatever. I have no copy or copies of the letters which the plaintiff sent the Guaranteed Bond & Mortgage Company before it failed, which had to do with the payment of the Guest mortgage and notes. If I have any of the letters which I received from Guaranteed Bond & Mortgage Company which had to do with these payments, I don't know where they are. I do not remember the matters about which I wrote the Guaranteed Bond & Mortgage Company having to do with these notes and mortgage; my letters would be complaining letters, that's all. I mean, complaining to them about not receiving either the principal or interest on the Guest mortgage and notes. I did not have considerable correspondence with Guaranteed Bond & Mortgage Company

about the failure of Guest to pay, but I did have some. I can't say that I ever received from them a letter to the effect that Guest either had not paid the principal or interest notes or was not paying the interest notes. I don't remember what reason they gave for not sending either the money on the principal or interest notes. I can't say positively whether they ever wrote me that Guest was not paying the interest notes, but it occurs to me that they told me to wait patiently on Guest and they thought the money would come through. I never knew that he had paid until I got a statement from the receiver of the Guaranteed Bond & Mortgage Company. I can not say of anything that was done either by me as agent of the plaintiff, or by H. L. Winter or the H. L. Winter Inc., to apprise the defendant we had purchased his notes and mortgage. Up to the 1927 interest, not always on the due date, the interest was paid in full. (This last statement was in answer to the question: You had reason to believe and did believe that Guest was regularly paying to the Sessions Loan & Trust Company, or to the Guaranteed Bond & Trust Company, the interest notes when the notes became due.) I knew that Guest was either paying to the Sessions Loan & Trust Company or to Guaranteed Bond & Mortgage Company up to 1927 his interest notes, and I forwarded to them the interest coupons as they were paid—forwarded these interest coupons to either the Sessions Loan & Trust Company or to Guaranteed Bond & Mortgage Company. I do not think I ever authorized the Guaranteed Bond & Mortgage Company to collect for the Convention the notes, coupon and principal, of the Guest loan. The Guaranteed Bond & Mortgage Company took over the business of the Sessions Loan & Trust Company and made the collections without authorization from the Universalist Convention of Vermont and Province of Quebec; and on receipt of remittance from the Guaranteed Bond & Mortgage Company, I would forward receipt for interest."

Under the evidence the jury were authorized to find that the loan company was the agent of the plaintiff for the collection of the notes sued on; and this is true despite the statement of the witness that he did not think he ever authorized the company to collect for these notes, and that the company made the collections "without authorization from the Universalist Convention." The jury were required to consider the evidence as a whole, and were

not bound to find in accordance with any isolated portion of the testimony. If the loan company was in fact the agent of the Convention to make collection for these notes, it is immaterial that the notes were not produced at the time of payment. Where the maker of a note pays to a supposed agent the amount of the note without requiring its production, he merely assumes the burden of proving agency. As against the person then owning the note, he is not prevented from establishing the express or implied authority of the person receiving payment; and a claim of agency may be proved, as any other fact, by circumstantial evidence. *Turner* v. *Turner,* 123 *Ga.* 5 (7) (50 S. E. 969, 107 Am. St. R. 76). "The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties." *Cable Co.* v. *Walker,* 127 *Ga.* 65 (56 S. E. 108). See also *Guilford* v. *Stacer,* 53 *Ga.* 619 (2); *Bank of the University* v. *Tuck,* 96 *Ga.* 456 (23 S. E. 467); *Walton Guano Co.* v. *McCall,* 111 *Ga.* 114 (2) (36 S. E. 469); *Dibble* v. *Law,* 141 *Ga.* 364 (80 S. E. 999); *Roberts* v. *Bank of Eufaula,* 20 *Ga. App.* 221 (92 S. E. 1015); *Sherrod* v. *Springfield Baptist Church,* 21 *Ga. App.* 200 (93 S. E. 1009); *Star Furniture Co.* v. *Dubberly,* 46 *Ga. App.* 178 (167 S. E. 207).

The course of dealing between the plaintiff and the loan company can not be explained upon the theory that the latter was liable for the payment of these notes, and that the plaintiff was dealing with it on that account. The principal note was indorsed by the loan company without recourse; and it made no indorsement of the two interest coupons in the suit, as these were payable in the first instance to Harry L. Winter Inc., by which they were indorsed in blank and delivered to the plaintiff corporation. It appears that the loan company by some kind of agreement warranted the title to the notes. But the evidence failed to show any secondary liability or any other executory contractual relation between the loan company and the Convention, and disclosed no duty or obligation by the company whereby it should be prodded about collections and respond to the plaintiff's demands during a period of years, unless the parties to such course of dealing intended to act upon the relation of principal and agent.

In the view which we take of the case, it is unnecessary to determine whether the failure of the loan company to mail to the debtor the interest coupon which matured in 1928, and for which he made

a remittance to it, would, if standing alone, have shown a lack of authority, with notice to the defendant. The evidence was not confined to this fact. The plaintiff sent all notices of maturities to the loan company and had no communication whatever with the defendant. It complained to the loan company about slow collections, and inquired about future collections. In view of the long course of conduct and the other proved circumstances, the question of agency was an issue for determination by the jury. Nor is it necessary here to consider the question of whether an agent to collect interest is, without more, authorized to collect principal. The evidence in this case authorized the inference of an agency to do both.

There is a suggestion in the brief of counsel for the plaintiff that the defendant did not sufficiently plead that the loan company was the agent of the plaintiff to collect these notes. The plea, however constituted enough to amend by; and there being no demurrer, and the evidence of agency having been admitted without objection, the verdict in favor of the defendant will not be set aside merely because the plea did not allege agency in express terms. *Napier* v. *Strong,* 19 *Ga. App.* 401 (2) (91 S. E. 579). The evidence authorized the verdict, and the court did not err in refusing a new trial.      *Judgment affirmed.   All the Justices concur.*