22814. NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE et al. v.
OVERSTREET.

ARGUED JANUARY 12, 1965—DECIDED APRIL 20, 1965—
REHEARING DENIED MAY 7, 1965.

18

*Maria L. Marcus, Ann G. Feldman, Robert T. Carter, E. H. Gadsden, B. Clarence Mayfield, Donald L. Hollowell,* for plaintiffs in error.

*Dickey, Futrell & Barker, Robert E. Barker, Grady Lee Dickey,* contra.

MOBLEY, Justice. ▮ (a) All the defendants were represented by the same attorneys and the defensive pleadings were in material respects the same. The rulings made here apply to each and all, as did the judgments of the trial court.

In brief, the petition as amended alleged that plaintiff owned and operated a retail grocery store at a named location in Savannah and had for 16 years, and had created good will and good faith in the course of his business with the public; that on May 30, 1962, he had in his employ a 14 year old Negro boy, who, one of his clerks advised him, had stolen some grocery items; that he admonished the boy and discharged him, and within about two hours, the boy and a police officer returned to the store and the boy accused him of beating him; that the boy's aunt on the same day swore out a warrant against him for assault and battery, and he charged the boy with stealing. That on the next night, May 31, 1962, at a named church of which F. D. Jaudon was pastor, there was a mass meeting of the N.A.A.C.P. and the Savannah Branch of the N.A.A.C.P. called pursuant to circulars distributed to members at the direction of Law to protest the alleged "beating of a fourteen (14) year old negro boy by the owner of the Tropical Fruit Market." Present were the defendants Law and Jaudon, the defendant, Law, appearing and acting as agent of the N.A.A.C.P., as its agent, employee and servant, within the scope of his agency, employment, and service, and in the furtherance of the business of the corporation and in a like capacity with the Savannah Branch and the Georgia State Conference of Branches of the N.A.A.C.P. At the meeting, the defendants unlawfully, wilfully, knowingly, and with malice and the intention of putting plaintiff out of business, organized what they termed a "Selective Buying" campaign to begin the next day at plaintiff's place of business; that pursuant to said plan defendants caused pickets to be placed adjacent to his place, who stopped customers and prospective customers on their way to his place of business, told them of the beating of the boy and urged them not to trade with plaintiff; that the picketing consisted of mass picketing in that numbers of pickets gathered around the premises of plaintiff, obstructing and interfering with the use of the public sidewalks and streets and entrance to plaintiff's business. That said mass picketing was a part of the con-

spiracy of defendants to intimidate customers from entering plaintiff's store and to force, intimidate, and coerce him into going out of business. That the pickets are harassing and intimidating customers from going into plaintiff's store by creating an atmosphere of possible violence thereabout by having large numbers of pickets in and around plaintiff's premises, by stopping all customers and inciting and inflaming them against plaintiff and by telling them false and misleading statements as to plaintiff's conduct, all of which caused his customers to be fearful of trading with him; that defendants encouraged and induced the public to boycott plaintiff's business in order to accomplish their unlawful purpose of putting him out of business; that when the picketing began more than ⅔ of his customers were negroes, and defendants knew this and they, the defendants, initiated and carried on the unlawful, wilful and malicious conspiracy with the intent and purpose to damage him in the pursuit of his lawful business; that defendant Law was the leader of the pickets, was instrumental in placing them, directed their method of operation and participated as a picket, all of which acts were performed as agent of the N.A.A.C.P., the Savannah Branch and the Georgia State Conference of Branches and within the scope of his agency; that all of the acts constituted a general malicious scheme and conspiracy to force plaintiff out of business and to hinder him in engaging in a lawful business. It was also alleged that the pickets threatened physical harm to plaintiff's employees in an attempt to force them to quit his employ in violation of *Code Ann.* § 54-801 (Ga. L. 1947, p. 620). It is alleged that as a result of said conspiracy he suffered described pecuniary loss in the operation of his business, that the good will which he enjoyed had been destroyed, damaging him in the amount of $40,000. He also asked $50,000 punitive damages.

The petition alleges an unlawful conspiracy of the defendants to destroy the lawful business of the plaintiff, which resulted in loss of business and damages to his property. "Every agreement between two or more persons to accomplish a criminal or unlawful object, or a lawful object by criminal or unlawful means, is an unlawful conspiracy, and any person whose rights are injured by acts done in furtherance of such conspiracy has his action at law for redress in damages." *Brown & Allen v. Jacobs Pharmacy*

*Co.,* 115 Ga. 429, 441 (41 SE 553, 57 LRA 547, 90 ASR 126);
*Cook v. Robinson,* 216 Ga. 328 (1, 2) (116 SE2d 742). "Ma-
licious injury to the business of another will give a right of action
to the injured party." *Southern R. Co. v. Chambers,* 126 Ga.
404 (1) (55 SE 37, 7 LRA (NS) 926); Original Ballet Russe, Ltd.
v. Ballet Theater, Inc., 133 F2d 187; Shell Oil Co., Inc. v. State
Tire & Oil Co., 126 F2d 971; Boston Casualty Co. v. Bath Iron
Works Corp., 136 F2d 31. See also *DeFoor v. Stephens,* 133 Ga.
617 (1) (66 SE 786). "Where one maliciously and wrongfully,
and with the intent to injure another person's business prevents
others from dealing with him and his business is thereby injured,
the person thus injured has a cause of action against the person
thus causing the injury, for the loss and damage sustained."
*American Oil Co. v. Towler,* 56 Ga. App. 866 (194 SE 223),
citing *Brown & Allen v. Jacobs Pharmacy Co.,* supra.

In 9 ALR2d 228 in an exhaustive annotation dealing with "Lia-
bility of one who induces or causes third person not to enter into
or continue a business relation with another," it is said at
p. 232 ". . . it would seem that the principle is generally rec-
ognized that a person's business is property in the pursuit of
which he is entitled to protection from tortious interferences by
a third person who, in interfering therewith, is not acting in the
exercise of some right, such as the right to compete for business"
citing cases from many States, the United States Supreme Court,
and this court.

"Every individual has a natural right to pursue a lawful occu-
pation and to conduct his business according to his own plans and
policies, where he does not offend the law or unlawfully infringe
upon the rights of others." *Jones v. Van Winkle Gin &c. Works,*
131 Ga. 336, 337 (62 SE 236, 17 LRA (NS) 848, 127 ASR 235).
The plaintiff's business was a lawful business, was being operated
in a lawful manner, and was property in which he had the right
to protection in the use and enjoyment thereof. He had not in
the operation of that business infringed upon the rights of the
defendants. If he, as defendants contend, committed an assault
and battery upon an employee, that is a criminal act, the pun-
ishment for which rests with the courts and not with individuals.
Otherwise, we have anarchy. The alleged conspiracy to destroy
his property by means of mass picketing of his store, intimida-

tion and harassing of customers and employees simply because they may have thought he had mistreated a negro employee was unlawful, *Jones v. Van Winkle Gin &c. Works,* supra, (1); *Pedigo v. Celanese Corp.,* 205 Ga. 392, 397 (54 SE2d 252), and constituted a tort against plaintiff by the conspirators for which they would be liable in damages, upon proper proof of the allegations.

Where, as here, a cause of action for damages for tort against the defendants is set out, the allegations showing a conspiracy make any actionable deed by one of the conspirators chargeable to all. *Cook v. Robinson,* 216 Ga. 328 (4), supra, and cases cited therein. The liability is joint and several. *Smith v. Manning,* 155 Ga. 209 (2) (116 SE 813). A corporation may be a party to a conspiracy and may be held civilly liable for resulting damages to the same extent as a natural person. 16 Am. Jur. 2d 151, § 47. The allegations that the N.A.A.C.P. corporation acting through its agents, conspired with others to damage and destroy plaintiff's business and performed described acts and did damage his property, stated a cause of action against the corporation as well as the individuals and the organizations which they represented and for which they acted. The trial court properly overruled the general demurrer to the petition, as amended, as to all the defendants.

(b)  The motion to dismiss the petition on the ground that it failed to state a cause of action for the reason that the defendants have the right, protected by the Constitution of the United States, to engage in peaceful picketing and other forms of peaceful activity designed to persuade the public not to patronize a commercial establishment that practices racial discrimination, and that in engaging in these activities the defendants were exercising a right of freedom of speech and assembly guaranteed by the due process clause of the 14th Amendment to the United States Constitution and the Constitution of Georgia, is without merit.

First, there is no allegation that the plaintiff practiced racial discrimination, nor any facts alleged from which such conclusion could be drawn. On the other hand, the petition alleges that more than two-thirds of plaintiff's customers were negroes. The sole reason alleged for the picketing was the alleged assault and battery upon the 14 year old negro boy who worked for the plaintiff.

It is not alleged that plaintiff was charged with beating the boy because he was a negro. "The right to exercise freedom of speech by means of peaceful picketing carries with it no right to use force, violence, intimidation, harassment or the like. *Robinson v. Bryant*, 181 Ga. 722 (184 SE 298); *Local Union No. 3871, United Steel Workers of America v. Fortner*, 202 Ga. 206 (5) (42 SE2d 734); *Burgess v. Georgia Fla. &c. R. Co.*, 148 Ga. 417 (96 SE 865); American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 206." *Pedigo v. Celanese Corp.*, 205 Ga. 392, 397, supra. The petition alleges the use of force, violence, intimidation, harassment and other like activities. Applicable here is the following from *Ellis v. Parks*, 212 Ga. 540, 542 (93 SE2d 708): "The judicial theory that peaceful picketing is a form of free speech, as announced in Carlson v. California, 310 U.S. 106 (60 SC 746, 84 LE 1104), which is protected by the Constitutions, both Federal and State (*Code Ann.* §§ 1-801, 2-115), can not be stretched to shield malevolent picketing for the purpose of injuring the employer and aiding an unlawful strike. Both the Supreme Court of Georgia and the Supreme Court of the United States have held that a person can not employ lawful acts for spite and solely for the purpose of injuring another, and that such malicious purpose renders the acts unlawful. *Hornsby v. Smith*, 191 Ga. 491 (13 SE2d 20, 133 ALR 684); American Bank &c. Co. v. Federal Reserve Bank, 256 U.S. 350 (41 SC 499, 65 LE 983, 25 ALR 971)." See also *Fleming v. H. W. Ivey Const. Co., Inc.*, 215 Ga. 460, 462 (2) (111 SE2d 97); *Curry v. Construction & General Laborers Union Local No. 438*, 217 Ga. 512 (123 SE2d 653). Where, as alleged here, the sole purpose of the picketing of plaintiff's place of business was to injure and damage his business, as punishment of him for the alleged beating of a negro boy who worked for him, the picketing is unlawful and not protected under the free speech provisions of the Federal and State Constitutions.

The picketing alleged here was unlawful for the further reason that it was in violation of *Code Ann.* §§ 54-801, 54-805 (Ga. L. 1947, pp. 620, 621) which provide: "It shall be unlawful for any person, acting alone or in concert with one or more other persons, by the use of force, intimidation, violence, or threats thereof, to prevent or attempt to prevent any individual from quitting or

continuing in the employment of, or from accepting or refusing employment by, any employer, or from entering or leaving any place of employment of such employer." § 54-801. "It shall be unlawful for any person, acting alone or in concert with one or more other persons, by the use of force, intimidation, violence, or threats thereof, to prevent or attempt to prevent any employer from lawfully engaging or continuing to engage in any proper and lawful business activity, or from the proper, lawful or peaceable use or enjoyment of his property used or useful in the conduct of such business, or from acquiring materials or supplies for the purposes of such business, or from disposing of the goods, wares or products of such business, or to prevent or attempt to prevent any carrier or other person from supplying or delivering materials or supplies to any such employer, or from receiving or accepting delivery on the premises of such business of the goods, wares or products of such business." § 54-805. "It is a penal offense in this State to attempt by threats, violence, intimidation, or other unlawful means to prevent any person from engaging in any lawful employment. . ." *Robinson v. Bryant,* 181 Ga. 722, 728, supra. See *Code* § 66-9906 (Ga. L. 1887, p. 107); *Woodard v. Collier,* 210 Ga. 239 (78 SE2d 526); *Powers v. Courson,* 213 Ga. 20 (96 SE2d 577). The trial court committed no error in overruling the motion to dismiss the petition.

■ The trial court did not err in overruling the special demurrers numbers 3, 4, and 5. Special demurrers 1 and 2 were sustained by the trial court. Special demurrer 3 complains that the petition does not allege facts showing that any of the defendants committed alleged unlawful acts of harassing and intimidating customers of plaintiff by creating an atmosphere of violence around his place of business. The petition alleges a conspiracy among the defendants and others, and that the defendant Law acting for the N.A.A.C.P., organized, directed and actually participated in the picketing, and that the pickets did harass and intimidate plaintiff's customers. The act of any conspirator would be the act of all engaged in the conspiracy, thus the allegation is sufficient. Special demurrer 4 complaining that the time and place the alleged acts of the pickets in threatening physical harm to plaintiff's employees occurred is not alleged is without merit, as the petition sets out the place, plaintiff's store, and the

time—the period from May 31, 1962, when the picketing began, to June 22, when it was stopped by injunction. Special demurrer 5 was met by amendment alleging facts called for by the demurrer.

■ Motion for new trial.

(a) General grounds. The evidence was amply sufficient to establish the allegations of the petition that the defendants Law and Jaudon and other members of the N.A.A.C.P. formed a conspiracy among themselves to injure and damage plaintiff's business and to seek to put him out of business by picketing his place of business as punishment of him for (as they claim) beating a 14 year old negro boy who worked for him. Law testified that he selected the pickets, placed them at designated points around plaintiff's store, and maintained them there until enjoined by the court and that he himself served on the picket line from time to time. Large numbers of people joined in the picketing, at times blocking the sidewalks and making it necessary for plaintiff's employees and customers to walk in the street and blocking their entrance or making it difficult to enter. There was also evidence of mass picketing of the plaintiff's place of business effected by surrounding the premises and sidewalks adjacent thereto with large numbers of people, so as to prevent persons from entering his store, by creating an atmosphere of violence around the premises by inciting, inflaming, and prejudicing customers all of which caused customers to be fearful of doing business with him. The plaintiff and his wife and employees were threatened with violence, called vile and vulgar names. Bricks and rocks were thrown through the windows and onto the roof. A pistol was shot from the vicinity of the picket line, the bullet passing over the head of a customer who lived directly back of the store. The employees were threatened with physical harm if they continued to work for plaintiff.

Counsel for defendant contend that the evidence did not show that the pickets placed by the N.A.A.C.P. committed the various acts outlined above. However, the evidence is undisputed that all was peace and quiet around plaintiff's place of business until the picketing began and it returned only after the defendants were enjoined from further picketing of the place. The evidence was sufficient for the jury to conclude that as a result of the

mass meeting of the N.A.A.C.P. the picketing began, that the picketing was led by pickets placed on the picket line by Law, that they were joined by large numbers of sympathizers or other members of the conspiracy, and that the presence of the pickets brought about mass picketing, threats, violence, the use of vile, vulgar and indecent language toward plaintiff, his wife, employees and customers. The picketing was not peaceful, thus unlawful; and it was for an unlawful purpose—punishment of plaintiff for the alleged commission of a criminal offense, assault and battery.

(b)    In determining whether there was sufficient evidence to establish a cause of action as against the defendants, the Savannah Chapter of the N.A.A.C.P., the N.A.A.C.P. corporation of New York, and the Georgia Conference of Branches of the N.A.A.C.P., it must be determined whether there is evidence that the defendants Law or Jaudon were acting as agents of said defendants. The evidence shows that the defendant Law was president of both the Savannah Branch and of the Georgia State Conference of Branches of the N.A.A.C.P., a New York corporation. Acting in that capacity he, by means of the circulars, called a mass meeting of the N.A.A.C.P. and of the Savannah Chapter of the N.A.A.C.P., in which meeting he and Jaudon participated and led the group in reaching the conclusion that the N.A.A.C.P. would picket the plaintiff's place of business with the view of injuring and damaging his business by inducing customers and prospective customers to refrain from trading with him; and, pursuant thereto, Law selected pickets, placed them at various places around plaintiff's place of business, picketed himself, and generally directed the picketing. "The function of the N.A.A.C.P.," according to Law, "is to give aid and assistance to people in the minority group, meaning the negro group in seeking their rights and protection under the Constitution." In furtherance of that plan the N.A.A.C.P. corporation of New York acts and operates in Georgia through the Savannah Chapter and other chapters, which compose the defendant, Georgia State Conference of Branches of the N.A.A.C.P. The petition was served upon the N.A.A.C.P. corporation, the Savannah Branch, and the Georgia State Conference of Branches of the N.A.A.C.P. by serving Law, as their agent. No plea to the

jurisdiction or traverse of service was filed by any defendant, but each submitted to the jurisdiction of the court by filing answers, not made subject to their general demurrer, which alleged that the petition did not state a cause of action against the defendant.

The Savannah Branch used the corporate name, N.A.A.C.P., and held itself out as representing the national corporation. The national corporation gave orders and counsel to its local representatives at annual conventions; the locals were affiliated with the national organization, and under its corporate charter, were units thereof; one paying dues to the local N.A.A.C.P. also became a member of the national N.A.A.C.P.; members of the local were members of the national N.A.A.C.P. and a portion of the dues went to the N.A.A.C.P. corporation. These facts evidence that the locals are within the framework of the national organization and are used in furtherance of the latter's business and interest. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." *Code* § 4-101. A contract or an express agency agreement is not necessary to establish the relation. *Hubert v. Harpe,* 181 Ga. 168, 169 (182 SE 167). "The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties. . ." *Cable Co. v. Walker,* 127 Ga. 65 (1) (56 SE 108), and "A claim of agency may be established by circumstantial evidence. . ." *Universalist Convention v. Guest,* 179 Ga. 168 (2) (175 SE 466) and cases cited.

The national corporation never at any time disavowed the agency of Law, Jaudon, or the Savannah Chapter in acting for it in this matter. It was notified of the action by Law. It came into court and defended the case on its merits, contending that a cause of action was not alleged or proven against them.

If Law originally acted without authority and assumed to act for them without authority, they had the option to repudiate or ratify the act, but they were required to do one or the other. And where, as here, they never repudiated the act, they are deemed to have affirmed it. See Mechem, Outlines of Agency (3d Ed.), p. 94, § 152; *Southern Motors of Savannah v. Krieger,* 86 Ga. App. 574 (71 SE2d 884); *Haney School Furn. Co. v.*

*Hightower Bapt. Inst.*, 113 Ga. 289 (2) (38 SE 761) : *Glisson v. Burkhalter*, 31 Ga. App. 365 (4) (120 SE 664).

We are of the opinion that the record supports the conclusion that Law acted as agent of the defendant's Savannah Chapter, and of the N.A.A.C.P. New York corporation, and within the scope of his authority in calling the mass meeting, holding the meeting, in concluding to picket plaintiff's store and in picketing it, causing injury and damage thereto.

(c) We do not believe the evidence is sufficient to render the defendant Georgia State Conference of Branches of the N.A.A.C.P. responsible for the acts of Law, Jaudon and other members of the Savannah Branch of the N.A.A.C.P. in picketing and damaging plaintiff's business. There is no evidence that that organization had anything to do with this matter. While Law was president of that defendant, there is no evidence that he purported to act for it in calling a mass meeting to deal with plaintiff or in carrying out the plan agreed upon to picket plaintiff's business, nor that any other member purported to be acting as agent or in behalf of that defendant. So far as the record shows, no branches of the Georgia State Conference of Branches of the N.A.A.C.P. other than the Savannah Branch, participated in the conspiracy or authorized anyone to act for them, or ratified any acts of Law or anyone else who may have purported to act for them.

Thus we conclude that as to the Georgia State Conference of Branches of the N.A.A.C.P. the verdict was without evidence to support it, and that the court erred in not granting the motion for new trial as to this defendant. As to the defendants, Law, Jaudon, the Savannah Chapter of the N.A.A.C.P. and the N.A.A.C.P. corporation, the general grounds of the motion for new trial are without merit.

■ Compensatory and punitive damages.

(a) The jury awarded the plaintiff compensatory damages of $35,793.05 and punitive damages of $50,000.

Plaintiff alleged and the evidence supported the allegations that his net income from his business for the twelve months preceding the picketing was $3,018.26 and he suffered a loss of $952.19 during the twelve months following the beginning of the picketing, or a net loss of $3,970.45, which was the result of

defendants' picketing his place of business; that the loss would have been much greater but for his action in terminating the services of seven of his eight employees and his wife and himself increasing their work at the store from three or four hours per day to twelve to fourteen hours. Plaintiff testified that he planned to continue in business for ten to twelve years, and his age and condition would support the conclusion that he could do so. It is uniformly recognized that good will is a species of property and constitutes a valuable asset of the business of which it is a part. 24 Am. Jur. 804, § 4. "Good will is an attribute of a business. . ." 24 Am. Jur. 807, § 10. "Goodwill is the favor which the management of a business wins from the public, and the probability that old customers will continue their patronage and resort to the old place." *Armstrong v. Atlantic Ice &c. Corp.*, 141 Ga. 464, 466 (81 SE 212). The evidence shows conclusively that the plaintiff's business enjoyed the good will of the negro community prior to the picketing by defendants, as two of every three of his customers were negroes, and that the picketing of his store by defendants destroyed the good will of the negroes, as they stopped trading with him. To wrongfully injure and damage the good will of plaintiff's business gives a cause of action in tort for the resulting damage. In determining the value of the good will and the amount of damage thereto, the actual loss of earnings, as the proximate result of the tort, may be considered in determining the amount of damages to the good will of plaintiff's business. Thus, the evidence as to loss of earnings present and future and other evidence of damage to the good will of plaintiff's business caused by the illegal picketing thereof would support a finding that he suffered more than $40,000 in actual damages. The verdict of $35,793.05 as compensatory damages suffered by plaintiff was authorized by the evidence and was not excessive.

(b) This division has been re-written to include discussion of the complaints thereof made in the motion for rehearing. Punitive damages in the amount of $50,000 were awarded plaintiff by the jury. *Code* § 105-2002 provides: "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as

compensation for the wounded feelings of the plaintiff." This court in the recent case of *Cook v. Robinson,* 216 Ga. 328, 332 (10), supra, held that allegations of the petition that the defendants damaged petitioner in a named amount by their wilful, deliberate, wrongful and unlawful deeds, acts, etc., committed pursuant to a conspiracy among them to unlawfully ruin and destroy plaintiff's business, stated a cause of action for punitive damages, citing *Code* § 105-2002 and *Walker v. Grand International Brotherhood &c. Engineers,* 186 Ga. 811 (199 SE 146). The allegations of plaintiff's petition were substantially the same and stated a cause of action for punitive damages, and the evidence was sufficient to support same as shown by a review of the evidence on the general grounds in Division 3 (a).

Plaintiffs in error complain for the first time in their motion for rehearing of the court's charge on punitive damages. While the amended motion for new trial contains twenty-five special grounds, it did not contain one complaining of the charge on punitive damages. Thus the question was not submitted to the trial court, was not passed upon by that court, is not excepted to in this court, and thus under the law of this State cannot be considered by this court. Under the Constitution of this State, Art. VI, Sec. II, Par. IV (*Code* § 2-3704), this is a court alone for the trial and correction of errors of law from the superior courts and other named courts, and "The Supreme Court . . . shall not decide any question unless it is made by a specific assignment of error in the bill of exceptions. . ." *Code* § 6-1607; *Brown Transport Corp. v. Truck Drivers & Helpers Local Union No. 728,* 218 Ga. 581, 584 (129 SE2d 767) and cases cited.

Punitive damages are recoverable in this case under *Code* § 105-2002 either "to deter the wrongdoer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." The evidence would support the verdict on either theory. The plaintiff could not recover for both, nor does the record indicate that the jury awarded punitive damages on both.

It is a question for the jury when punitive damages shall be allowed as well as the amount of such damages. *Batson v. Higginbothem,* 7 Ga. App. 835, 839 (2) (68 SE 455); *Kolodkin v. Griffin,* 87 Ga. App. 725, 731 (5) (75 SE2d 197).

The measure of damages where punitive damages are recover-

able is to be fixed by the enlightened conscience of an impartial jury. *Selman v. Barnett,* 4 Ga. App. 375 (2) (61 SE 501) ; *Head v. John Deere Plow Co.,* 71 Ga. App. 276, 279 (4) (30 SE2d 662).

"The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." *Code* § 105-2015. See also *Lang v. Hopkins,* 10 Ga. 37 (3) ; *Adkins v. Williams,* 23 Ga. 222 (2) ; *Thorpe v. Wray,* 68 Ga. 359 (3a) ; *Realty Bond & Mort. Co. v. Harley,* 19 Ga. App. 186 (2) (91 SE 254) ; *Fields v. Jackson,* 102 Ga. App. 117 (1) (115 SE2d 877). This court cannot say that the amount awarded as punitive damages is excessive.

■ Special grounds for new trial. Special ground 1. While it was not relevant in this case whether the defendant Law, as President of the Savannah Chapter and the Georgia State Branches of the N.A.A.C.P., had picketed on other occasions without first talking to and trying to negotiate their differences with the party to be picketed, his answer that that was generally their method and the reason it was not followed here was that the neighborhood was already incensed and the action they endorsed was already in progress, rendered the admission of the evidence harmless.

Special ground 2. The court did not err in permitting the witness to testify over objection that she was pregnant when she was threatened by someone in the picket line, as the evidence showed that the picket line was established by the defendant Law, acting for the N.A.A.C.P. The fact that she was seven months pregnant and was threatened in that condition goes to the gravity of the picketing and would be material on the question of its unlawfulness.

Special ground 3. It was not error to admit, over the objection that none of the defendants was present, testimony of the witness as to threats and other remarks the negroes standing on the corner and across the street made to her when she traded at the store, as Law admitted that he assisted in placing the pickets on the picket line, and the evidence shows that several of the remarks were made by the pickets and others assisting them in picketing.

Special ground 4. The admission of the testimony objected to in special ground 4 was not error for any reason assigned.

Special grounds 5, 6, 7, and 8 objecting to testimony as to threats, acts of violence, cursing, use of vulgar language, and a pistol shot by those picketing the plaintiff's place of business, are without merit. As pointed out by the trial judge in over-ruling these grounds, it clearly appears from the evidence that the presence of the pickets incited acts of violence around the place and that if the presence of the pickets and what they told people brought about the situation of tenseness and lawlessness about plaintiff's place of business, the pickets and those respon-sible for them would be liable, if the picketing was not justified or amounted to mass picketing. This evidence was admissible on the question of liability of defendants for the damage done to plaintiff's business and responsibility of the defendants therefor.

Special grounds 10, 11, 12, 17, 18, 19, 20, and 21. The rulings heretofore made on direct exceptions to the denial of nonsuits and on the general grounds dispose of adversely to the plaintiffs in error special grounds 10 and 11, complaining of the trial court's refusal to grant a nonsuit, special ground 12 of failing to direct a verdict, and special grounds 17, 18, 19, 20, and 21 which com-plain that the verdict is contrary to law because it deprives defendants of their right to freedom of speech and of their property without due process of law in violation of the United States Constitution.

Special grounds 22, 23, and 24 complaining respectively of the charges "Before the plaintiff can recover, you must be satisfied that the preponderance of the credible evidence in this case showed that the defendants conspired to unlawfully injury (sic) plaintiff in his business and by illegal acts did in fact injured (sic) him"; "Now I charge you that one has a right to do busi-ness, and that right is a property right, and if that right is interfered with he can recover damages"; and, "But whatever your verdict is, it should be signed and dated by your foreman," are so obviously without merit they are overruled without dis-cussion. Plaintiffs in error did not argue them.

Special ground 14. It was not error to charge "as the court sees it, you can't get agency and conspiracy separated in this case," as the question was whether there was a conspiracy to violate plaintiff's rights by the N.A.A.C.P. defendants acting by

and through their agents Law, Jaudon, and other members of the N.A.A.C.P.

Special ground 15. It was not error to charge the jury that "you can consider the effect of the picket. Did the pickets incite—were the fact that the pickets were there incite activity upon people who were not at all connected with the organization; and if that was incited by the pickets, by their mere presence, you could consider the pickets and the placing of the pickets as the proximate cause of what resulted." The court continued, "But if that was an entirely independent efficient cause that had nothing to do with the pickets, if you find that was true, of course the pickets nor. the organizations who placed them there could be responsible. So you have to determine. Proximate cause is always a question of fact for the jury." The court's charge taken as a whole made it clear that if the picketing incited others, who were not pickets, to do acts against the plaintiff's business that the picketers would be a contributing proximate cause of what resulted, but if these were entirely independent efficient causes that had nothing to do with the pickets, the pickets would not be responsible therefor.

In response to the motion for rehearing, we wish to point out that a conspiracy to wrongfully, unlawfully, and maliciously injure and damage plaintiff's business and to put him out of business is charged against the defendants; that such conspiracy was formed at a mass meeting of the N.A.A.C.P. called by the defendants Law and Jaudon, and that pursuant thereto picketing began the next day and continued until stopped by the court; and that there was violence, threats against plaintiff and his employees, bricks and rocks thrown into and on top of the store, blocking of the sidewalks and entrance to his store, mass picketing, harassment and intimidation of customers and employees, coming from the mass of negroes picketing the place, some of whom were admittedly those representing the defendants and placed there by Law. "The law recognizes the intrinsic difficulty of proving a conspiracy . . . The conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." *Woodruff v. Hughes,* 2 Ga. App. 361

(58 SE 551); *Horton v. Johnson,* 192 Ga. 338, 346 (15 SE2d 605). "A conspiracy or common intent may be shown to have existed between the parties by proof of acts and conduct, *Davis v. State,* 114 Ga. 104 (39 SE 906); *Odum v. State,* 183 Ga. 854 (190 SE 25); and it may be shown by circumstantial or direct evidence. *McElroy v. State,* 124 Ga. 240 (2) (54 SE 125)." *Huckaby v. Griffin Hosiery Mills,* 205 Ga. 88, 91 (52 SE2d 585). Applying those principles here, the evidence would authorize the jury to find that such violent and unlawful picketing was the proximate result of the conspiracy without specific proof that one or more of the pickets placed there by Law were the ones who threw the rock, or performed other specific acts of violence, intimidation, etc.

The principles enumerated in Wright v. State of Georgia, 373 U.S. 284 (83 SC 1240, 10 LE2d 349); Terminiello v. Chicago, 337 U.S. 1 (69 SC 894, 93 LE 1131), rehearing den. 337 U.S. 934; Near v. Minnesota, 283 U.S. 697 (51 SC 625, 75 LE 1357); Cantwell v. Connecticut, 310 U.S. 296 (60 SC 900, 84 LE 1213), cases relied upon by defendants in their motion for rehearing on this ground, are distinguishable on their facts. The principle is explicitly stated and applied in Wright v. Georgia, supra, where the Supreme Court of the United States reversed this court, holding that the convictions of negro children playing in a park in Savannah, formerly used exclusively by whites, cannot be sustained on the ground that their presence there "was likely to cause a breach of the peace by others, since the possibility of disorder by others cannot justify exclusion of a person from a place where he had a constitutional right to be." There was disorder, violence, intimidation, etc., here—not the mere possibility of such; and furthermore, the pickets had no lawful or constitutional right to form a conspiracy to violate plaintiff's right to operate his business, where he was not infringing any of their rights, or to force him out of business as punishment for committing a misdemeanor upon one of his employees or prevent or attempt to prevent his employees from continuing in his employ by intimidation, force or violence, etc.

This case does not involve a controversy between the races. The relations of this white storekeeper and the negroes of this community were obviously friendly and cordial, for his business depended upon their friendship and good will. He had both, as

evidenced by the fact that more than two-thirds of his customers were negroes. He had built this good will over a number of years, which must have required his good will toward them. The single incident, whether caused by plaintiff firing the boy or whipping him—whichever is true—and the evidence as to what occurred is inconclusive, would not justify the conclusion that the boy's race had anything to do with it. There is no evidence that what happened occurred because he was a negro. It could as well have happened to a white boy. This is obviously not a case of peaceful picketing to protest racial discrimination.

Special ground 16 complains that the charge set out above in the ruling on Special ground 15 that if the picketing by the N.A.A.C.P. incited others to join in and commit acts against plaintiff's business, that the act of the pickets would be the proximate cause of the injury deprived the Savannah Branch of the N.A.A.C.P. of freedom of association in violation of the 1st and 14th Amendments of the United States Constitution. The ground does not show that it violates defendant's rights of freedom of association, as contended.

*Judgment reversed as to the defendant Georgia State Conference of Branches of the N.A.A.C.P. Judgment affirmed as to all other defendants. All the Justices concur.*