76182. TSILIMOS v. NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE et al.
(370 SE2d 816)

MCMURRAY, Presiding Judge.

Plaintiff brought this libel action against The National Association for the Advancement of Colored People ("NAACP") and the Vidalia Branch of the NAACP ("Vidalia Branch"). It was alleged that the NAACP was responsible for the publication of flyers which were distributed by the Vidalia Branch. The flyers concerned the local Dairy Queen which was managed by plaintiff. They read: "DON'T EAT OR PATRONIZE THE VIDALIA DAIRY QUEEN. The manager of our local Vidalia Dairy Queen practices sexual harassment, alcohol abuse on the premises, unfair treatment, and profanity to his own workers. We don't need or want this kind of manager in our community. Help us help our community. THE VIDALIA NAACP." Defendants answered the complaint and denied its material allegations.

The case proceeded to trial. Upon the close of plaintiff's evidence, the NAACP moved for a directed verdict. The motion was granted. Thereafter, the jury rendered a verdict in favor of plaintiff and against the Vidalia Branch in the amount of $58,000 ($3,000 actual damages and $55,000 punitive damages). Judgment was entered in accordance with the verdict and plaintiff appealed. In his sole enumeration of error, plaintiff contends the trial court erred in granting the NAACP's motion for a directed verdict. *Held:*

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions and inferences therefrom demands a particular verdict. OCGA § 9-11-50 (a); *Tri-Eastern Petro. Corp. v. Glenn's Super Gas,* 178 Ga. App. 144, 145 (1) (342 SE2d 346) (1986)." *Beard v. Fender,* 179 Ga. App. 465 (346 SE2d 901). "In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. *Folsom v. Vangilder,* 159 Ga. App. 844 (285 SE2d 583) (1981)." *Skelton v. Skelton,* 251 Ga. 631, 633 (4) (308 SE2d 838).

Viewing the evidence most favorably to plaintiff, we find the following: Shortly after plaintiff terminated the employment of two

black female employees, he was visited by Joanne Eason. She identified herself as a representative of the NAACP and the Vidalia Branch. Nothing came of that meeting. Tensions mounted in Vidalia. On October 21, 1985, plaintiff's attorney addressed a letter to the "Vidalia — Toombs County Branch NAACP." The letter sought a resolution of the conflict which was not accomplished. In January 1986 the Vidalia Branch published and distributed the flyers described above. The flyers were distributed for two days.

Following the distribution of the flyers, Earl Shinholster, a representative of the NAACP in Atlanta, attended a meeting at a restaurant in Vidalia. He also attended a meeting which took place in the office of plaintiff's attorney. No evidence was adduced concerning what was said or what action was taken at the meetings. It was clear, however, that the NAACP did not repudiate the actions of the Vidalia Branch.

Relying upon *National Assn. for the Advancement of Colored People v. Overstreet*, 221 Ga. 16 (142 SE2d 816), cert. dismissed, 384 U. S. 118 (86 SC 1306, 16 LE2d 409), plaintiff takes the position that it was incumbent upon the NAACP to repudiate the actions of the Vidalia Branch in order to escape liability for the distribution of the flyer. In *Overstreet*, W. W. Law, the president of the Savannah Branch of the NAACP and the Georgia State Conference of Branches of the NAACP, called a mass meeting of the NAACP which led to the unlawful picketing of plaintiff's store. The Supreme Court determined that the evidence was sufficient to establish a cause of action against the NAACP. In this regard, the Supreme Court held: "The national corporation never at any time disavowed the agency of Law . . . or the Savannah Chapter in acting for it in this matter. It was notified of the action by Law . . . If Law originally acted without authority and assumed to act for them without authority, they had the option to repudiate or ratify the act, but they were required to do one or the other. And where, as here, they never repudiated the act, they are deemed to have affirmed it." *National Assn. for the Advancement of Colored People v. Overstreet*, supra at p. 27.

The holding reached by the Supreme Court in *Overstreet* is no longer tenable. In *National Assn. for the Advancement of Colored People v. Claiborne Hardware Co.*, 458 U. S. 886 (102 SC 3409, 73 LE2d 1215), the Supreme Court of the United States held that the First Amendment prohibits the imposition of liability against the NAACP solely on the basis of political affiliation. In that case, suit was brought in the State of Mississippi against the NAACP on the ground that its field secretary, Charles Evers, was engaged in tortious boycott activities. The "chancellor in equity" found the NAACP liable. He determined that the NAACP had the option of repudiating the activities of its agent and that, by failing to do so, it subjected

itself to liability. The Supreme Court of Mississippi affirmed. Reversing, the Supreme Court of the United States held: "The associational rights of the NAACP and its members have been recognized repeatedly by this Court. The NAACP — like any other organization — of course may be held responsible for the acts of its agents throughout the country that are undertaken within the scope of their actual or apparent authority. [Cit.] Moreover, the NAACP may be found liable for other conduct of which it had knowledge and specifically ratified.

"The chancellor made no finding that Charles Evers or any other NAACP member had either actual or apparent authority to commit acts of violence or to threaten violent conduct. The evidence in the record suggests the contrary . . . Similarly, there is no evidence that the NAACP ratified — or even had specific knowledge of — any of the acts of violence or threats of discipline associated with the boycott . . . The chancellor made no finding that the national organization was involved in any way in the boycott.

"To impose liability without a finding that the NAACP authorized — either actually or apparently — or ratified unlawful conduct would impermissibly burden the rights of political association that are protected by the First Amendment." Id. at 930, 931.

The high court concluded by quoting with approval Justice Douglas' dissent from the dismissal of the writ of certiorari in *National Assn. for the Advancement of Colored People v. Overstreet*, 384 U. S. 118, supra: " 'To equate the liability of the national organization with that of the Branch in the absence of any proof that the national authorized or ratified the misconduct in question could ultimately destroy it. The rights of political association are fragile enough without adding the additional threat of destruction by lawsuit. We have not been slow to recognize that the protection of the First Amendment bars subtle as well as obvious devices by which political association might be stifled. [Cit.]' " *National Assn. for the Advancement of Colored People v. Claiborne Hardware Co.*, supra at 931, 932.

The holding in *National Assn. for the Advancement of Colored People v. Claiborne Hardware Co.*, supra, is quite apt. Plaintiff introduced no evidence demonstrating that the NAACP authorized (either actually or apparently) or ratified the tortious acts of the Vidalia Branch. It was not incumbent upon the NAACP to repudiate those acts. *National Assn. for the Advancement of Colored People v. Claiborne Hardware Co.*, supra. It follows that the NAACP cannot be held liable for those acts and that the trial court did not err in granting the NAACP's motion for a directed verdict.

*Judgment affirmed. Birdsong, C. J., and Benham, J., concur. Pope, J., disqualified.*

557

DECIDED JUNE 15, 1988.

*D. Duston Tapley, Jr.*, for appellant.
*Hugh B. McNatt, Randolph W. Thrower, Charles T. Lester, Jr., John L. North*, for appellees.