A99A1868, A99A1870. GLYNN-BRUNSWICK MEMORIAL
HOSPITAL AUTHORITY v. GIBBONS; and vice versa.
A99A1869. ALTA ANESTHESIA ASSOCIATES OF GEORGIA, P.C.
v. GIBBONS.
(530 SE2d 736)

PHIPPS, Judge.

Jacquelyn Gibbons, M.D., worked as an anesthesiologist at Southeast Georgia Regional Medical Center. She and her corpora-

tion, Southeast Georgia Anesthesiologist, P.C., (collectively herein-after "Gibbons") sued for injunctive relief against the implementation of an exclusive services contract between the Glynn-Brunswick Memorial Hospital Authority d/b/a Southeast Georgia Regional Medical Center and Alta Anesthesia Associates of Georgia. Gibbons later added a motion for declaratory judgment that the contract was illegal and void as a general restraint of trade. On December 29, 1998, the trial court entered an order declaring that the contract was patently anticompetitive and that the Authority could not enter into such exclusive services contracts. The order also established the framework for a subsequent damages trial by Gibbons against Alta.

Each party has filed an appeal. The Authority and Alta challenge the declaratory judgment. Alta also challenges an August 21, 1998 ruling allowing Gibbons to amend her complaint to seek damages against Alta. Gibbons challenges the December 29, 1998 order on the basis that it reaffirms an August 21, 1998 tentative ruling by the court that Gibbons could not receive attorney fees and expenses against the Authority.

We find procedural error in the trial court's entry of declaratory judgment and reverse that portion of the December 29 order. We affirm the judgment of the trial court to the extent that it allowed Gibbons to amend her complaint to seek damages against Alta and denied her attorney fees and expenses against the Authority.

In 1995, the Authority became concerned about lapses in anesthesiology coverage at the hospital and wanted to prepare for the advent of managed care. The Authority decided the anesthesiology needs of the hospital would be met best through an exclusive contract with one provider of anesthesia services. After the Authority notified the hospital's anesthesiology department of its decision, members of the anesthesiology staff formed Alta with the intention of seeking the contract. Gibbons and two other anesthesiologists on staff opted not to become members of Alta. Alta was awarded the exclusive services contract with the Authority, but the contract allowed the anesthesiologists who were not members of Alta to continue their practices at the hospital. New anesthesiologists would have to be accepted into Alta before they could practice at the hospital.

Gibbons asserts that after the inception of the exclusive contract, Alta manipulated scheduling in the anesthesia department so that Alta anesthesiologists were assigned increased percentages of the more lucrative surgeries and the operations where neither the operating physician nor the patient affirmatively selected an anesthesiologist.

The contract was scheduled to go into effect on August 2, 1996. On July 31, Gibbons filed a complaint and a motion for temporary, interlocutory and permanent injunctions against the implementation

of the contract. Gibbons's complaint alleged that the Authority and Alta had conspired to restrain trade and interfere with her exercise of medical staff privileges in violation of OCGA § 13-8-2 (a) (2) and had violated the medical staff bylaws by hindering her ability to practice based upon her nonmembership in Alta. On February 13, 1997, Gibbons added the motion for declaratory judgment. Subsequently, the Authority and Alta filed motions for summary judgment asserting that Gibbons lacked standing to challenge the contract, that the Authority and Alta were immune from any antitrust liability and that the Authority had the discretion to enter into an exclusive services contract.

The Court reserved ruling on the standing issue and otherwise denied the motions for summary judgment. The court decided to conduct a bifurcated trial. In the first phase, an advisory jury would determine whether Gibbons had suffered any reduction of income as a result of the contract and whether the costs to patients for anesthesia services had increased as a result of the contract. In the second, nonjury phase, each side would be allowed to present legal arguments and expert testimony on whether the contract had anticompetitive effects.

During the jury phase of the trial, the parties reached an agreement designed to end the litigation. Under the agreement, the contract would be amended as follows: (1) Gibbons would receive a proportional share of the cases where no preference for a particular anesthesiologist was expressed; (2) subject to reasonable economic terms, Alta would be required to accept new anesthesiologists into its membership and practice at the hospital if the Authority deemed a need for more anesthesiologists; and (3) Alta would need cause to terminate an anesthesiologist. Alta and Gibbons also agreed to negotiate for up to 30 days on terms under which Gibbons would join Alta. The negotiations were unsuccessful, and Gibbons did not join Alta.

Subsequently, a hearing was held on August 21, 1998, to handle unresolved matters such as attorney fees. After both sides presented evidence, the court expressed concern that Alta had continued to exclude Gibbons from the anesthesiology schedule even after the amendments to the contract. The court tentatively decided attorney fees and expenses were appropriate against Alta from the settlement date forward but that attorney fees and expenses were not appropriate against the Authority. The court also ruled sua sponte that it would give Gibbons 30 days to amend her complaint to seek money damages against Alta. The court dismissed the Authority from the litigation.

Gibbons did amend her claim to seek damages against Alta. And on December 29, 1998, the court entered the order declaring that

> the . . . Authority cannot enter into contracts with groups of physicians which allow the physicians to prevent potential competitors from practicing medicine in Defendant's facility unless they agree to enter into business relationships with those physicians

and that the original contract between the Authority and Alta was "patently anti-competitive." The court further ruled that Gibbons would be allowed in successive phases to present two damages claims to a jury.

> To recover damages for alleged misconduct by Defendant Alta prior to the date the parties agreed to a non-preference case assignment system, Plaintiffs will be required to show that Alta engaged in a concerted policy of referring such cases to other Alta members to the exclusion of Dr. Gibbons, *and* that such a policy was established with the specific intent of eliminating Dr. Gibbons from the marketplace, for the purpose of obtaining a marketplace advantage for members of Alta. A very different situation is presented by Plaintiffs' claim for damages allegedly incurred subsequent to the parties' agreement. That claim can be litigated as a simple breach of agreement claim.

If Gibbons prevailed on either claim, the jury would then be asked to determine whether and to what extent she was entitled to attorney fees and expenses.

The Authority appeals in Case No. A99A1868, Alta appeals in Case No. A99A1869 and Gibbons appeals in Case No. A99A1870. Because the Authority and Alta have presented similar enumerations of error, Case Nos. A99A1868 and A99A1869 will be addressed jointly.

### Case Nos. A99A1868 & A99A1869

1. For several reasons, we find the court's entry of declaratory judgment was inappropriate. A declaratory judgment is authorized when there are

> "circumstances showing [a] necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might

reasonably jeopardize his interest."[1]

The purpose of a declaratory judgment is " 'to permit one who is walking in the dark to ascertain . . . where he is going, to turn on the light before he steps rather than after he has stepped in a hole. (Cits.)' [Cit.]"[2]

> Where the rights of the parties have already accrued and the party seeking the declaratory judgment does not risk taking future undirected action, a declaratory judgment would be "advisory." [Cit.] Regardless of when an action reaches the point that it no longer presents a justiciable controversy and presents only a question of academic interest, when it reaches that point, the entry of declaratory judgment is not appropriate, [cit.], because a court "has no province to . . . give advisory opinions. (Cit.)" [Cit.][3]

Here, Gibbons, the plaintiff, was never in the dark as to any future action she might take that would jeopardize her legal interests. She simply sought a declaration that the actions of others, in executing the exclusive services contract, were prohibited. Furthermore, the action about which Gibbons sought a declaration had already occurred. The Authority and Alta had executed their contract, and the rights of the parties had already accrued.

Finally, declaratory relief had become unnecessary. In its order, the court noted that it was rendering declaratory judgment despite the fact that the offensive provisions of the original contract already had been eliminated by the settlement agreement between the parties. Declaring a defunct contract anticompetitive was in no way a guide to future action in an existing controversy.

The court should have continued with resolution of Gibbons's claims for other types of relief, but she should not have been granted a declaratory judgment.[4] The legality of the original contract between the Authority and Alta may have arisen in the resolution of other claims, but, if the issue was to be broached, the other claims provided the proper context.

A jury trial was conducted on Gibbons's damages claims against Alta, and a fourth appeal, which relates to that trial, has been dock-

---

[1] (Citation omitted.) *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 344 (489 SE2d 803) (1997).

[2] *Slaughter v. Faust*, 155 Ga. App. 68, 69 (1) (270 SE2d 218) (1980).

[3] *Baker v. City of Marietta*, 271 Ga. 210, 214-215 (1) (518 SE2d 879) (1999).

[4] See *Empire Fire &c. Ins. Co. v. Metro Courier Corp.*, 234 Ga. App. 670, 671 (1) (507 SE2d 525) (1998); *McBride v. Bd. of Corrections*, 221 Ga. App. 796 (2) (472 SE2d 693) (1996); *Chattahoochee Bancorp v. Roberts*, 203 Ga. App. 405 (416 SE2d 875) (1992).

eted in this court. If the legality of the original contract is an issue that must be addressed in adjudicating the merits of that fourth appeal, we will do so then. In Case Nos. A99A1868 and A99A1869, we find that the court's entry of declaratory judgment was procedurally erroneous. The court's order of December 29, 1998, is reversed to the extent it effectuates the declaratory judgment.[5] Remaining issues regarding the validity of the exclusive services contract need not be addressed at this time.

2. Regarding Alta's claim that the court erred in allowing Gibbons to amend her complaint to seek damages, we are guided by OCGA § 9-11-15 (a):

> A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

This section is to be liberally construed in favor of allowance of amendments, particularly when the opposing party is not prejudiced thereby.[6] Like the right of amendment, the discretion of the trial court in controlling it is very broad.[7] Determinations of the trial court in this regard will not be disturbed absent a manifest abuse of discretion.[8]

Alta asserts the amendment prejudiced it by allowing Gibbons to present claims for money damages. In this sense, any such amendment would prejudice the defendant. Invariably, the claimant amends his pleadings to enhance the likelihood or scope of potential relief against the defendant. The record does not indicate and Alta does not suggest that it was in any way impaired in its ability to defend against the merits of Gibbons's claims for damages.[9] We find no abuse of discretion by the court in allowing the amendment.

## Case No. A99A1870

3. Gibbons sought attorney fees and expenses against the Authority for bad faith under OCGA § 13-6-11 and discovery abuses under OCGA § 9-15-14. At the hearing on August 21, 1998, the court found attorney fees and expenses were appropriate against Alta

---

[5] See *Baker*, supra at 215.

[6] *Bourquine v. City of Patterson*, 151 Ga. App. 232 (259 SE2d 214) (1979).

[7] *Henderson v. Easters*, 178 Ga. App. 867, 870 (2) (345 SE2d 42) (1986).

[8] Id.

[9] Compare *Mulkey v. Gen. Motors Corp.*, 164 Ga. App. 752, 754 (3) (299 SE2d 48) (1982), rev'd on other grounds, *Andean Motor Co. v. Mulkey*, 251 Ga. 32 (1) (302 SE2d 550) (1983).

because Alta had acted in bad faith after entering into the settlement agreement with Gibbons. The court did not state a reason for its determination that attorney fees were not appropriate against the Authority. Subsequently, in the December 29, 1998 written order, the court ruled, "Since all parties agree the Defendant Hospital Authority has no exposure to an award of damages, it will not be a party to the jury trial."[10]

The record does not show that all parties agreed that the Authority had no exposure to damages. And Gibbons interprets the language "no exposure to damages" as suggesting the court based its denial of attorney fees and expenses against the Authority on an erroneous legal conclusion that the Authority was immune from an award of attorney fees and expenses. We do not agree with that interpretation, which is belied by the court's earlier ruling that the Authority did not have immunity from Gibbons's claim under OCGA § 13-8-2. We also find insufficient evidence in the record to conclude that the court erred in determining that attorney fees should not be levied against the Authority.[11]

OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith [in making the contract] . . . the jury may allow them."[12] Bad faith under this section relates to actions prior to the institution of the lawsuit.[13] " 'When a trial court sits as both judge and jury, the court's findings of fact are binding on appeal, and, unless wholly unsupported or clearly erroneous, will not afford a basis for reversal.' "[14]

Gibbons asserts the Authority acted in bad faith by failing to intervene against Alta's scheduling abuses. First, the failure to intervene that Gibbons attributes to the Authority would have occurred *after* the institution of this litigation, which began before the contract

---

[10] Determinations on whether attorney fees will be awarded under OCGA § 13-6-11 are generally left to the jury; see *Jim Andersen & Co. v. ParTraining Corp.*, 216 Ga. App. 344, 346 (3) (454 SE2d 210) (1995), but, here, the record shows that the court had become the finder of fact.

[11] See *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 735 (9) (389 SE2d 251) (1989) (finder of fact's determination under OCGA § 13-6-11 will be upheld unless clearly erroneous); *Hyre v. Denise*, 214 Ga. App. 552, 557 (10) (c) (449 SE2d 120) (1994) (abuse of discretion standard governs review of court's determination under OCGA § 9-15-14).

[12] "This statute specifically refers to actions in contract and may apply to suits where recovery as to a contract lies in both contract and tort, that is, where the contract was procured or transacted in bad faith or was induced by fraud and deceit." (Citation omitted.) *Country Pride Homes v. DuBois*, 201 Ga. App. 740, 741 (2) (412 SE2d 282) (1991).

[13] *Gordon v. Ogden*, 154 Ga. App. 641, 642 (2) (269 SE2d 499) (1980).

[14] (Citation omitted.) *Jennings Enterprises v. Carte*, 224 Ga. App. 538, 541 (5) (481 SE2d 541) (1997).

was executed. Second, Gibbons has failed to cite portions of the record that support her contention. Finally, even if it were true that the Authority failed to stop Alta's scheduling abuses, bad faith by the Authority toward Gibbons is not necessarily demonstrated.

OCGA § 9-15-14 gives trial courts the authority to award attorney fees and expenses for abuses of discovery procedures. Gibbons asserts the Authority was recalcitrant in complying with her discovery requests and refers to two motions to compel that she filed. The fact that Gibbons filed motions to compel does not mean the Authority abused the discovery process. Gibbons cites a hearing on one of her motions, but, there, the court ordered her to amend her requests because they were too broad. The record fails to demonstrate an abuse of discovery procedures by the Authority. We find the court did not err in denying Gibbons's request for attorney fees and expenses against the Authority.

*Judgment affirmed in Case No. A99A1870. Judgment affirmed in part and reversed in part in Case No. A99A1869. Judgment reversed in Case No. A99A1868. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 8, 2000 —
RECONSIDERATION DENIED APRIL 4, 2000.

*Gilbert, Harrell, Gilbert, Sumerford & Martin, Wallace E. Harrell, Lisa G. Wood,* for Glynn-Brunswick Memorial Hospital Authority.

*Bouhan, Williams & Levy, Roy E. Paul, Walter C. Hartridge,* for Alta Anesthesia Associates of Georgia, P.C.

*Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, John K. Larkins, Jr., John J. Ossick, Jr.,* for Gibbons.