A00A0238. ALTA ANESTHESIA ASSOCIATES OF GEORGIA, P.C. v. GIBBONS et al.
(537 SE2d 388)

PHIPPS, Judge.

A jury trial was held on tort and breach of contract claims asserted by Jacquelyn Gibbons, M.D., and her corporation, Southeast

---

Georgia Anesthesiologist, P.C., (collectively hereinafter "Gibbons") against Alta Anesthesia Associates of Georgia, a professional corporation. Alta appeals awards of compensatory and punitive damages entered against it. Alta contends the trial court erred in denying its motions for directed verdict, in giving certain jury instructions, in allowing the jury to award punitive damages, in failing to limit the amount of the punitive damages award, and in allowing an award of special damages on Gibbons's breach of contract claim. We do not find that the trial court erred in any of these respects. Therefore, we affirm.

Gibbons worked as an anesthesiologist at Southeast Georgia Regional Medical Center, operated by the Glynn-Brunswick Memorial Hospital Authority. In 1995, the Authority became concerned about lapses in anesthesiology coverage at the hospital and wanted to prepare for the advent of managed care. The Authority decided the anesthesiology needs of the hospital would be met best through an organized group of anesthesiologists. After the Authority notified the hospital's anesthesiology department of its decision, members of the anesthesiology staff formed Alta and procured a contract to provide anesthesia services to the hospital. Gibbons and two other anesthesiologists on staff opted not to become members of Alta. The contract, which purported to be one for exclusive services, allowed Gibbons and the two other independent anesthesiologists to continue their practices at the hospital even though they were not members of Alta. However, new anesthesiologists would have to be accepted into Alta before they could practice at the hospital.

Shortly before the contract was scheduled to go into effect, Gibbons filed a complaint and a motion for temporary, interlocutory, and permanent injunctions against the implementation of the contract. Her complaint alleged that the Authority and Alta had conspired to restrain trade and interfere with her exercise of medical staff privileges in violation of OCGA § 13-8-2 (a) (2) and had violated the medical staff bylaws by hindering her ability to practice based upon her nonmembership in Alta. Gibbons later added a motion for declaratory judgment asserting that the contract was illegal and void as a general restraint of trade.

Gibbons also asserted that after implementation of the exclusive contract, Alta manipulated scheduling in the anesthesia department so that Alta anesthesiologists were assigned increased percentages of more lucrative surgeries and the operations where no anesthesiologist had been pre-selected and that Alta intimidated surgeons and other staff persons to switch preferences from independent anesthesiologists to Alta.

The Authority and Alta filed motions for summary judgment arguing that Gibbons lacks standing to challenge the contract, that the Authority and Alta were immune from any antitrust liability,

and that the Authority has the discretion to enter into an exclusive services contract.

The court reserved ruling on the standing issue and otherwise denied the motions for summary judgment. The court decided to conduct a bifurcated trial. In the first phase, an advisory jury would determine whether Gibbons had suffered any reduction of income as a result of the contract and whether the costs to patients for anesthesia services had increased as a result of the contract. In the second, nonjury phase, each side would be allowed to present legal arguments and expert testimony on whether the contract had anticompetitive effects.

During the jury phase of the trial, the parties reached an agreement designed to end the litigation. Under the agreement, the contract would be amended as follows: (1) Gibbons would receive a proportional share of the cases where no preference for a particular anesthesiologist was expressed; (2) subject to reasonable economic terms, Alta would be required to accept new anesthesiologists into its membership and practice at the hospital if the Authority deemed a need for more anesthesiologists; and (3) Alta would not be able to terminate an anesthesiologist without cause. Alta and Gibbons also agreed to negotiate on terms under which Gibbons would join Alta. The negotiations were unsuccessful, and Gibbons did not join Alta.

Subsequently, a hearing was held on August 21, 1998, to dispose of unresolved matters such as attorney fees. After both sides presented evidence, the court expressed concern that Alta had continued to exclude Gibbons from the anesthesiology schedule even after the amendments to the contract. The court tentatively decided attorney fees and expenses were appropriate against Alta from the settlement date forward but that attorney fees and expenses were not appropriate against the Authority. The court also ruled sua sponte that it would give Gibbons 30 days to amend her complaint to seek money damages against Alta.

Gibbons did amend her claim to seek damages against Alta. And on December 29, 1998, the court entered an order declaring that "the . . . Authority cannot enter into contracts with groups of physicians which allow the physicians to prevent potential competitors from practicing medicine in Defendant's facility unless they agree to enter into business relationships with those physicians" and that the original contract between the Authority and Alta was "patently anticompetitive." The court further ruled that Gibbons would be allowed to present damages claims to a jury. It dismissed the Authority from the future litigation.

Each party filed an appeal. The Authority and Alta challenged the declaratory judgment. Alta also challenged an August 21, 1998 ruling allowing Gibbons to amend her complaint to seek damages

against Alta. Gibbons challenged the December 29, 1998 order on the basis that it reaffirmed an August 21, 1998 tentative ruling by the court that Gibbons could not receive attorney fees and expenses against the Authority.

In Case Nos. A99A1868 and A99A1869, we reversed the entry of declaratory judgment on the basis of procedural error and upheld the court's judgment allowing Gibbons to amend her complaint to seek damages against Alta.[1] In Case No. A99A1870, we affirmed the court's denial of attorney fees and expenses that Gibbons sought against the Authority.[2]

While the appeals from the August 21 and the December 29 rulings of the trial court were pending in this court, the trial court conducted a jury trial on two damages claims asserted by Gibbons against Alta. The first claim related to alleged tortious conduct by Alta before the parties settled on a case assignment system. Gibbons asserted that Alta conspired to restrain trade by preventing her from practicing anesthesiology in Glynn County. The second claim was a breach of contract claim wherein Gibbons asserted that Alta had breached its obligations under the stipulated case assignment system.

The jury returned verdicts for Gibbons on both claims. It awarded her $106,250 on the tort claim, $56,000 on the breach of contract claim, and $875,000 in punitive damages.

1. First, Alta asserts that the trial court erred in denying its motions for directed verdict because the civil conspiracy cause of action failed to state a claim against Alta upon which relief could be granted under Georgia law. Alta moved for directed verdict both at the close of Gibbons's case and at the close of the evidence. The record shows that Alta did not assert in either instance that Gibbons's civil conspiracy cause did not present a claim upon which relief could be granted.

"A motion for directed verdict must state the *specific* grounds on which it is based, and a ground not asserted cannot thereafter be raised on appeal. [Cit.]"[3] Accordingly, we will not consider Alta's assertion that it was entitled to a directed verdict because Gibbons's civil conspiracy action failed to state a claim upon which relief could be granted.

2. Next, Alta asserts that the trial court erred in failing to direct a verdict in its favor because Georgia law does not recognize a tort for

---

[1] *Glynn-Brunswick Mem. Hosp. Auth. v. Gibbons*, 243 Ga. App. 341 (530 SE2d 736) (2000).

[2] Id.

[3] (Emphasis in original.) *Turpin v. Worley*, 206 Ga. App. 341, 346 (6) (425 SE2d 895) (1992).

restraint of trade. The focus of this court's review is upon substance and not merely nomenclature.[4] When the trial court's judgment is correct for any reason, we will affirm.[5]

In its final charge to the jury, the trial judge instructed as follows regarding Gibbons's tort claim.

I will first charge you concerning the claim of the plaintiff's based upon an alleged conspiracy. A conspiracy is an agreement to do an unlawful thing. Georgia law protects the rights of all citizens (a term which includes individuals as well as corporations) to compete for business and to maximize their incomes, and there is nothing improper about conduct undertaken for that purpose. However, Georgia law prohibits individuals and corporations from taking actions with the intent of depriving competitors of an opportunity to pursue their trade or profession. A conspiracy to deny a person or a corporation the right to pursue a business or profession cannot be established solely by evidence of a reduction in income due to the operation of a competitor or solely by evidence that the owners of a professional corporation referred cases they could not handle themselves to other owners of that corporation. To recover damages for a conspiracy, the plaintiffs must prove by a preponderance of the evidence that the defendant corporation engaged in conduct which was intended not only to further the interest of its owners but also to drive the plaintiff out of business. If you determine from the evidence that the defendant corporation, acting through its owners, participated in a conspiracy to prevent the plaintiffs from practicing anesthesiology in Glynn County, then the plaintiffs can recover damages from the defendant in an amount equal to those losses they incurred prior to the date the case referral procedure was placed into effect. If you determine from the evidence that the defendant corporation was operated for legitimate business purposes, which could include a desire to increase the income of its owners, then the operation of that corporation violated no legal right of the plaintiff, even if its operation had the effect of decreasing her income. . . . In order for the plaintiffs to recover on their conspiracy claim, the plaintiffs must prove by a preponderance of the evidence that illegal conduct by the defendant was the proximate cause of a harm to the plaintiffs.

---

[4] See *Cain v. Moore*, 207 Ga. App. 726, 727 (2) (429 SE2d 135) (1993).

[5] *Stoneridge Properties v. Kuper*, 178 Ga. App. 409, 412 (1) (343 SE2d 424) (1986).

In a pre-charge before opening statements, the trial judge charged similar language and also added, "In order to recover damages for income lost due to the operation of a corporation, a plaintiff must prove that the corporation violated some legal right of the plaintiff." Alta did not object to either charge.

Georgia law has recognized a tort for malicious injury to the business of another.[6] Here, the court charged on what is essentially the tort of interference with business relations. Such "a claim may be stated by showing a general malicious intention to harm the plaintiff's business, or to drive the plaintiff out of business."[7]

> "[T]he principle is generally recognized that a person's business is property in the pursuit of which he is entitled to protection from tortious interferences by a third person who, in interfering therewith, is not acting in the exercise of some right . . . to compete for business." . . . "Every individual has a natural right to pursue a lawful occupation and to conduct his business according to his own plans and policies, where he does not offend the law or unlawfully infringe upon the rights of others." [Cit.][8]

There was ample evidence to create at least a jury question on whether Alta committed such a tort. There was evidence that Alta procured business from surgeons who had stated preferences for independent anesthesiologists by refusing to respond to emergency calls to those surgeons' operations and by threatening those surgeons that they would not provide coverage for them, not even in cases of emergencies, unless they referred all of their surgeries to Alta. There was evidence that in one instance Alta refused to administer an epidural to a woman in labor because Gibbons was the assigned anesthesiologist, although Gibbons was being detained in another lengthy surgery. We find no error in the denial of this motion for directed verdict.

3. In its next claim, Alta asserts that the trial court erred in instructing the jury on civil conspiracy because it failed to state a claim upon which relief could be granted. The record also shows that Alta did not assert objections in the trial court to the court's instruction on civil conspiracy. Instead, it asserted that it did not believe there was a restraint of trade tort in Georgia.

---

[6] See *Brown & Allen v. Jacobs' Pharmacy Co.*, 115 Ga. 429, 445-446 (41 SE 553) (1902).
[7] Adams, Ga. Law of Torts (1996 ed.), § 33-3, p. 576.
[8] *NAACP v. Overstreet*, 221 Ga. 16, 21 (1) (a) (142 SE2d 816) (1965), cert. dismissed, 384 U. S. 118 (86 SC 1857, 16 LE2d 409), rehearing denied, 384 U. S. 981 (86 SC 1857, 16 LE2d 692) (1966); accord *Williams v. Maloof*, 223 Ga. 640, 641-642 (157 SE2d 479) (1967).

OCGA § 5-5-24 (a) provides:

Except as otherwise provided in this Code section, in all civil cases, no party may complain of the giving . . . [of] an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

But:

Notwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not.[9]

Given that Alta did not assert a trial objection to the court's instructions on civil conspiracy, the issue before us is whether the complained-of charge was harmful to Alta as a matter of law. We find that charging on civil conspiracy was not harmful as a matter of law.

Alta correctly asserts that a corporation cannot conspire with itself and that employees of a corporation are considered to be part of the corporate entity.[10] Alta further asserts that Gibbons presented no evidence that the alleged conspiracy included any parties other than Alta or the doctors who worked for it.

Pretermitting whether Gibbons's evidence was limited in that fashion, a conspiracy between Alta and its doctors or amongst Alta's doctors was not essential to recovery by Gibbons.

"A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. . . . [Cits.]"[11]

Proof of a conspiracy merely allows the plaintiff to expand the reach

[9] OCGA § 5-5-24 (c).
[10] See *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 187-188 (4) (450 SE2d 452) (1994), and cits.
[11] *Cook v. Robinson*, 216 Ga. 328-329 (1) (116 SE2d 742) (1960).

of her action to all joint tortfeasors/conspirators.[12]

" 'Malicious injury to the business of another will give a right of action to the injured party.' [Cit.]"[13] And every person or business entity is responsible for torts committed by its servants by its command or in the prosecution and within the scope of its business.[14] To the extent that Gibbons alleged Alta directly or indirectly through its doctors maliciously undertook actions aimed at destroying her practice in Glynn County, she asserted a theory against Alta that was cognizable regardless of the existence of a conspiracy.

Alta asserts that *Nalley Northside Chevrolet v. Herring*[15] demands reversal. We disagree. In *Nalley*, the plaintiff sued Nalley Chevrolet on claims of fraud, negligence, breach of contract, and Racketeer Influenced & Corrupt Organizations Act violations. Over objection from Nalley, the court gave a jury instruction on conspiracy. But the plaintiff's evidence regarding conspiracy had related only to Nalley and one of its employees. Nalley had correctly asserted to the trial court that it should instruct on the law of principal and agency rather than conspiracy. This court reversed the judgment because we could not say that the suggestion of conspiracy in the charge did not affect the jury's punitive damages award.

Where, as is the case here, the appellant did not object below to an erroneous jury instruction, the standard for reversal is higher. To say that a charge was harmful as a matter of law is to say "that it was blatantly prejudicial or resulted in a gross miscarriage of justice."[16] Given that the existence of a conspiracy was not essential to liability for Alta or essential to the award of damages against Alta, we cannot say the court's charge on conspiracy was blatantly prejudicial or resulted in a gross miscarriage of justice.[17] Therefore, we find no reversible error in the court's charge.

4. In its next claim, Alta asserts that the trial court erred in not directing a verdict it its favor because its conduct was pursuant to a lawful contract between Alta and the Authority. Although the trial court previously had issued a declaratory judgment that the relevant contract between Alta and the Authority was patently anticompetitive and not legal, Alta asserted in its motions for directed verdict that the contract was legal. It asserted that the Authority was privileged to enter such contracts and that there had been no adverse

---

[12] Id. at 329 (2).
[13] *NAACP v. Overstreet*, supra, 221 Ga. at 21 (1) (a).
[14] OCGA § 51-2-2.
[15] Supra, 215 Ga. App. 185.
[16] *Lavender v. State*, 234 Ga. 608, 609 (2) (216 SE2d 855) (1975).
[17] Compare *Bloom v. Doe*, 214 Ga. App. 90-92 (447 SE2d 72) (1994) (erroneous charge omitted essential element for liability); *Foskey v. Foskey*, 257 Ga. 736 (363 SE2d 547) (1988) (erroneous charge directly caused jury to include a prohibited matter in its damages award).

effect upon Gibbons's personal ability to compete or trade in general.

"A motion for directed verdict shall be granted only '(i)f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' [Cit.]"[18] The crux of Alta's argument appears to be that the contract was not illegal as a general restraint of trade and that, therefore, any actions taken by it in conformity with the contract were also legal. Pretermitting whether the contract was illegal as a general restraint of trade or legal as a partial restraint of trade,[19] Alta's argument has no merit.

At the Authority's insistence, the contract specifically provided that Gibbons and the other two nonAlta members of the anesthesiology staff

> will continue to be members of the Medical Staff and may function independently as an anesthesiologist [sic] at [the] Hospital. . . . [S]uch persons will be incorporated into the Service schedule as requested by surgeons and others[,] and . . . they will take all appropriate call as required by the Chief of the Department of Anesthesiology.

The Authority insisted on that provision to protect Gibbons's ability to practice and earn a living at the hospital. Regardless of whether there might be some situation in which a hospital authority could exclude physicians from practice in favor of an exclusive services arrangement with other physicians, this contract was not an exclusive services agreement, was not intended to be one, and was not even understood by Alta to be one. Evidence was presented that Alta threatened surgeons and staff persons that it would not cover even emergency procedures for those surgeons unless those surgeons routinely referred all their operations to Alta. Additional evidence was presented of instances where in fact Alta had refused to respond when called to cover procedures which had initially been assigned to one of the independent anesthesiologists. Such conduct was not authorized by the contract, and there were jury questions as to whether Alta had in fact engaged in this conduct.

The court did not err in refusing to grant a directed verdict on this basis.

5. Alta next asserts that the trial court erred in failing to give the following requested instruction to the jury:

> I charge you that not all restraints of trade are unconstitu-

---

[18] *Norfolk Southern Corp. v. Smith*, 262 Ga. 80, 83-84 (2) (414 SE2d 485) (1992).
[19] See OCGA § 13-8-2 (a) (2); *Tomlinson v. Humana, Inc.*, 495 S2d 630 (Ala. 1986) (holding that an exclusive pathology services contract was a partial restraint of trade).

> tional and the test in this state is whether the restraint involved is injurious to the public interest. I charge you that the State of Georgia has clearly articulated a state policy authorizing hospital authorities such as the Glynn-Brunswick Hospital Authority to enter into contracts such as the contract between the Hospital Authority and Alta in this case. Accordingly, I charge you that, to the extent that the conduct of the Defendants is consistent with the terms of the contract between the Hospital Authority and Alta, or is consistent with the By-laws of the Hospital, such conduct is legal and does not amount to a restraint of trade.

The record shows that Alta submitted a written request to charge, that the appropriateness of the charge was discussed during the charge conference, and that, afterward, the court decided not to give the charge. Alta did not place on the record an objection to the court's failure to give the charge.

First, we find that the issue was waived by Alta's failure to voice an objection on this point after the court gave its charge to the jury.[20] And second, we find that the charge was properly denied because at least portions of it were inapt and misleading and not adjusted to the facts.[21] The written instruction listed OCGA § 36-65-1 et seq. and *City of Calhoun v. North Ga. Elec. Membership Corp.*[22] as its principal supporting authorities. OCGA § 36-65-2 provides only that local governing authorities shall be immune from antitrust liability to the same degree and extent as enjoyed by the State of Georgia. In *City of Calhoun*, the Supreme Court of Georgia upheld legislation establishing exclusive territories for power companies. But that precedent is irrelevant, because even Alta conceded at trial that the instant contract was not an exclusive services contract. Moreover, the only basis for tort liability authorized by the court's instructions was Gibbons's allegations that Alta has intimidated surgeons and other hospital personnel to switch preferences for anesthesiologists to Alta and away from the independent anesthesiologists. Such conduct was not in conformity with the contract.

6. Alta asserts that the trial court erred in failing to grant it a directed verdict for the reasons stated in its earlier appeal to this court — Case No. A99A1869.[23] Alta did not argue to the trial court that it was entitled to directed verdict for those reasons. Instead, it argued individual substantive bases for its motion for directed ver-

---

[20] See *Smith v. Curtis*, 226 Ga. App. 470 (1) (486 SE2d 699) (1997).

[21] See *Diaz v. State*, 239 Ga. App. 795, 796 (2) (522 SE2d 242) (1999).

[22] 233 Ga. 759 (213 SE2d 596) (1975).

[23] *Gibbons*, supra, 243 Ga. App. 341.

dict. Some of those bases presented issues common to its first appeal to this court. The only one not yet addressed in this opinion is whether Gibbons had standing to bring this action.

Based upon *Valley Products Co. v. Landmark*,[24] Alta asserts that Gibbons did not have standing to sue because she was not a party to the contract between Alta and the Authority. Alta's argument is misplaced, however, because the claims that were tried in this case did not involve a challenge to the contract between Alta and the Authority. Gibbons asserted that Alta tortiously caused injury to her business and breached the settlement agreement that it had reached with her. She had standing to raise those claims.

7. Alta claims that the trial court erred in allowing a punitive damages award because Gibbons's actions did not contain a valid tort claim.[25] In light of our holding in Division 2 of this opinion, we decide this issue against Alta.

8. Alta asserts that the trial court erred in failing to limit the amount of the punitive damages award to $250,000 pursuant to OCGA § 51-12-5.1.

> Under OCGA § 51-12-5.1 (b), punitive damages may be awarded only where it is established by clear and convincing evidence that "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Pursuant to OCGA § 51-12-5.1 (g), punitive damages are limited to a maximum of $250,000 for any tort action, unless the trier of fact finds that "the defendant acted, or failed to act, with the specific intent to cause harm." [Cit.][26]

In *McDaniel v. Elliot*,[27] the Supreme Court of Georgia established a bright-line rule that for all cases tried after May 7, 1998, a party seeking punitive damages must "request both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the cap on punitive damages."[28]

We find that the requirements of *McDaniel* were met. The jury was specifically instructed that for Gibbons to recover damages on the conspiracy count, she must demonstrate that Alta acted with the

---

[24] 877 FSupp. 1087 (W.D. Tenn. 1994).

[25] See OCGA § 51-12-5.1 (b).

[26] (Footnote omitted.) *McDaniel v. Elliott*, 269 Ga. 262, 263-264 (1) (497 SE2d 786) (1998).

[27] Id.

[28] Id. at 265 (3).

specific intent to drive her out of business. Then, on a special verdict form, the jury was asked, "Did Defendant participate in a conspiracy to deprive Plaintiffs of their right to practice anesthesiology?" The jury answered, "Yes." Given the instruction on specific intent, the jury's response was tantamount to a finding that Alta had acted with specific intent to cause harm to Gibbons. We find no reversible error on this ground.

9. In its final claim, Alta asserts that the trial court erred in awarding special damages on Gibbons's breach of contract claim because Gibbons did not plead special damages with specificity as required by OCGA § 9-11-9 (g). The remedy for failure to plead special damages is to move for a more definite statement of the plaintiff's claim.[29] Alta did not so move. We find no error in this claim.

Having reviewed Alta's enumeration of errors and finding no reversible error, we affirm the judgment of the trial court.

*Judgment affirmed. Johnson, C. J., and Mikell, J., concur.*

DECIDED JULY 13, 2000 

*Bouhan, Williams & Levy, Roy E. Paul, Walter C. Hartridge, Troutman Sanders, Robert W. Webb, Jr., James A. Lamberth, David B. Foshee*, for appellant.

*Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, John K. Larkins, Jr., John J. Ossick, Jr.*, for appellees.

---

[29] *Bryant v. Haynie*, 216 Ga. App. 430, 432 (454 SE2d 533) (1995).