## A02A1992. MULLIGAN et al. v. ALTA ANESTHESIA ASSOCIATES OF GEORGIA, P.C. et al.
### (580 SE2d 678)

ADAMS, Judge.

This is the fifth appeal docketed in this Court[1] precipitated by the following events: In 1995, the Glynn-Brunswick Memorial Hospital Authority (Authority), which operated Southeast Georgia Regional Medical Center in Brunswick, became concerned about problems with the anesthesiology services provided by the hospital's anesthesiology department. At that time the anesthesiology department comprised nine independent anesthesiologists each holding privileges to practice at the hospital. The Authority decided that anesthesiology coverage at the hospital could best be provided by an organized group of anesthesiologists, and notified the anesthesiology department of its decision. Six of the anesthesiologists formed Alta Anesthesia Associates of Georgia, P.C. and procured a contract, which became effective around July 1996, to provide anesthesiology services to the hospital. At the Authority's insistence, the contract expressly allowed the three doctors who did not join Alta to continue to provide anesthesiology services at the hospital and expressly provided that they would be incorporated into the anesthesiology schedule "as requested by surgeons and others." However, new anesthesiologists would have to join Alta before they could practice at the hospital.

One of the three doctors who did not join Alta was Dr. Carol Mul-

---

[1] *Alta Anesthesia Assoc. of Ga. v. Gibbons*, 245 Ga. App. 79 (537 SE2d 388) (2000); *Glynn-Brunswick Mem. Hosp. Auth. v. Gibbons*, 243 Ga. App. 341 (530 SE2d 736) (2000) (three cases).

ligan, who had held privileges to provide anesthesiology services at the hospital since 1991. On September 29, 1999, Mulligan and her professional corporation Carol Mulligan, M.D., P.C. (referred to collectively as Mulligan) filed a multi-count complaint against Alta, the Authority, and Lynne Imhoff, M.D., asserting claims for conspiracy in restraint of trade, tortious interference with business relations, breach of duty to follow existing bylaws, defamation, and intentional infliction of emotional distress. The trial court granted Alta and Imhoff summary judgment, and Mulligan filed this appeal challenging the grant of summary judgment on her conspiracy to restrain trade and tortious interference claims.

1. On appeal of a grant of summary judgment, we determine whether the trial court erred in concluding that the moving party demonstrated that no genuine issue of material fact remained and was entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Mulligan argues, in essence, that summary judgment was improperly granted in her case because her claims and the evidence supporting her claims are similar or identical to those asserted by another independent anesthesiologist, Dr. Jacquelyn Gibbons, in *Alta Anesthesia Assoc. of Ga. v. Gibbons*, 245 Ga. App. 79 (537 SE2d 388) (2000), in which this Court upheld a jury award for the plaintiff.[2] Mulligan also argues that the trial court erred by refusing to find that her conspiracy to restrain trade claim is a separate and cognizable claim apart from her tortious interference claim. We agree with Mulligan that summary judgment was improperly granted, but disagree that a separate cause of action for restraint of trade exists under the facts of this case.

In both *Gibbons* and the case at hand, plaintiffs asserted that after Alta was awarded the contract to provide anesthesiology services to the hospital, it manipulated the operating room schedule and first call assignments[3] so that the independent anesthesiologists

---

[2] Gibbons was awarded $106,250 on her tort claim, $56,000 on her breach of contract claim, and $875,000 in punitive damages.

[3] Both before and after the formation of Alta, cases were assigned to the various anesthesiologists in accordance with Rule 6 of the Rules and Regulations, Department of Anesthesiology. Rule 6 provided, "The schedule coordinator prepares the daily OR schedule. As the schedule is being prepared, the following assignments are made first: (1) Surgeons' request for a particular anesthesiologist (2) Patients' request for a particular anesthesiologist. The remaining rooms are then assigned by the anesthesiologist on first call on that particular day." First call duty was assigned to the anesthesiologists on a rotating basis.

were assigned fewer cases or were assigned fewer of the higher pay-
ing cases, and further that through intimidation and the refusal to
assist the independent anesthesiologists, it sought to have the doc-
tors and the staff at the hospital use and prefer the services of Alta
and its members over those of the independent anesthesiologists. Id.
at 81. And in both *Gibbons* and the case at hand, the plaintiffs
asserted that these actions constituted, inter alia, a conspiracy to
restrain trade. Id. at 82.

On appeal in *Gibbons*, Alta asserted that it was entitled to a
directed verdict "because Georgia law does not recognize a tort for
restraint of trade." Id. at 82-83 (2). Without expressly addressing this
issue, we upheld the denial of the motion for directed verdict, noting
that the focus of our review is upon "substance and not merely
nomenclature" and that a judgment which is right for any reason will
be affirmed. Id. at 83 (2). We then went on to find that the trial court
had charged on what was "essentially the tort of interference with
business relations," id. at 84 (2), elaborating on the nature of the
claim as follows:

> Such a claim may be stated by showing a general malicious
> intention to harm the plaintiff's business, or to drive the
> plaintiff out of business. The principle is generally recog-
> nized that a person's business is property in the pursuit of
> which he is entitled to protection from tortious interferences
> by [another] person who, in interfering therewith, is not act-
> ing in the exercise of some right to compete for business.
> Every individual has a natural right to pursue a lawful occu-
> pation and to conduct his business according to his own
> plans and policies, where he does not offend the law or
> unlawfully infringe upon the rights of others.

(Citation, punctuation and footnote omitted.) Id. at 84 (2).

In this case, unlike the plaintiff in *Gibbons*, Mulligan did assert
a separate cause of action for tortious interference with business
relations, but urges that the elements of the two causes of action are
different, and that we should consider the claims separately. Mulli-
gan contends that to maintain her restraint of trade claim she must
show: (i) Alta engaged in an unfair method of competition, (ii) with
the intent to restrain trade (iii) which proximately caused her harm.
To establish a cause of action for tortious interference with business
relations, Mulligan must demonstrate that Alta "(i) acted improperly
and without privilege, (ii) purposely and with malice with the intent
to injure, (iii) induced a third party or parties not to enter into or con-
tinue a business relationship with [her], and (iv) for which [she] suf-
fered some financial injury." *Perimeter Realty v. GAPI, Inc.*, 243 Ga.

App. 584, 592 (5) (b) (533 SE2d 136) (2000). Thus, under Mulligan's theory of the case, she does not have to show that Alta induced third parties not to do business with her to maintain her restraint of trade claim.

We are unpersuaded that we should treat Mulligan's restraint of trade claim as a separate cause of action. Mulligan points to no cases, and we have found none, where our state appellate courts have rec-ognized a cause of action for restraint of trade in which an agreement, conspiracy, or combination was not involved.[4] And the case Mulligan cites in support of her argument that a Georgia court has treated these claims separately is an unpublished opinion from the Northern District of Georgia involving a conspiracy to engage in predatory pricing that is clearly inapposite to the present case. *U. S. Anchor Mfg. v. Rule Indus.*, Case No. 1:86-CV-2447 (N.D. Ga. November 22, 1995). Moreover, in considering certified questions from the United States Court of Appeals for the Eleventh Circuit in that case, our Supreme Court quoted language from the Eleventh Circuit opinion which cast doubt over whether intentional interference with business relations and conspiracy to restrain trade were distinct causes of action. *U. S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 296 (443 SE2d 833) (1994). We are thus unconvinced that Mulligan's claims should be treated as separate and distinct causes of action under the facts of this case.

2. But we are equally unpersuaded by Alta's argument that in this case, unlike in *Gibbons* in which we found "ample evidence to create at least a jury question on whether Alta committed [tortious interference]," id. at 84 (2), Alta has negated an essential element of Mulligan's tortious interference claim by producing affidavits from doctors practicing at the hospital who averred that Alta did not cause them to designate Alta or its members as their preferred anesthesiologists or to cease preferring Mulligan as their anesthesiologist. Although these affidavits may serve to create a jury issue, we do not think this evidence is fatal to Mulligan's claim.

First, the evidence introduced at the Gibbons trial, which was introduced in opposition to the motion for summary judgment in this case,[5] showed:

> Alta procured business from surgeons who had stated preferences for independent anesthesiologists by refusing to

---

[4] Mulligan concedes she cannot show a conspiracy in this case. See *Alta v. Gibbons*, 245 Ga. App. at 85 (3) (a corporation cannot conspire with itself and the employees of the corporation are considered part of the corporate entity).

[5] This Court has previously held that trial transcript evidence is admissible on a motion for summary judgment. *Abalene Pest Control Svc. v. Orkin Exterminating Co.*, 196 Ga. App. 463, 464-465 (3) (395 SE2d 867) (1990).

respond to emergency calls to those surgeons' operations and by threatening those surgeons that they would not provide coverage for them, not even in cases of emergencies, unless they referred all of their surgeries to Alta. There was evidence that in one instance Alta refused to administer an epidural to a woman in labor because. Gibbons was the assigned anesthesiologist, although Gibbons was being detained in another lengthy surgery.

*Alta v. Gibbons*, 245 Ga. App. at 84 (2). Although we are not suggesting that Mulligan's claims can be proved solely by reference to evidence concerning improper acts that Alta directed toward the other independent anesthesiologists, we find that to the extent Alta committed improper acts that were directed against the independent anesthesiologists as a group, they may be considered as creating a jury issue on Mulligan's claims. For example, when a doctor who routinely used an independent anesthesiologist was warned that he would suffer adverse consequences in terms of the coverage or assistance he would receive from Alta, this was not because he used a particular independent anesthesiologist, but because he did not routinely use Alta doctors. And some of Alta's actions to prevent the surgeons from using and preferring the independent anesthesiologists were directed toward the hospital staff, such as when the surgery coordinator was instructed by Alta to act like the independent anesthesiologists did not exist when making out the surgery schedule. Thus, construing the evidence in favor of Mulligan as the nonmovant, we hold that it is for the jury to determine whether Alta improperly manipulated the surgery schedule, the assignment of cases, and first call duty so that the independent anesthesiologists, and more particularly Mulligan, were not used or preferred by the doctors and hospital staff. Additionally, although the parties offer varying interpretations of the evidence, a jury question also exists concerning whether Alta improperly interfered with or manipulated the first call assignments and surgery schedule so that the Alta members were assigned a greater number of surgeries, particularly the more lucrative (private pay) surgeries.

Lastly, we note that Alta also contends this case is distinguishable from *Gibbons* because evidence was presented that Mulligan, whose privileges to practice at the hospital were discontinued in 1999, was the author of her own demise because of documented problems she had in dealing with certain doctors and hospital staff. But it is for a jury to determine whether Mulligan was responsible for her own professional demise, or whether Alta committed a compensable tort in this case.

*Judgment reversed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED MARCH 19, 2003 —
RECONSIDERATION DENIED APRIL 4, 2003 —

*Rogers & Hardin, Tony G. Powers, John C. Butters, Kevin Gough,* for appellants.

*Whelchel, Brown, Readdick & Bumgartner, John E. Bumgartner, Bradley J. Watkins, Gilbert, Harrell, Gilbert, Sumerford & Martin, Wallace E. Harrell,* for appellees.