A07A2142. MADONNA v. SATILLA HEALTH SERVICES, INC.
A08A0082. LEFEVER et al. v. SATILLA HEALTH SERVICES, INC.

(658 SE2d 858)

SMITH, Presiding Judge.

In these consolidated appeals, we revisit the ongoing dispute regarding cardiologist practice privileges at Satilla Regional Medical Center in Waycross ("the hospital"). Our recent decision in *Satilla Health Svcs. v. Bell*, 280 Ga. App. 123 (633 SE2d 575) (2006) ("*Satilla I*"), outlines the underlying facts in the dispute. In brief, the hospital has sought to implement what it terms an "exclusive" cardiology provider agreement with Baptist Specialty Physicians, Inc. ("BSP"). Various cardiologists affiliated with two other practice groups, Southern Heart Group ("SHG", f/k/a Diagnostic Cardiology Associates or "DCA") and South Georgia Cardiologists Associates ("SGCA"), have objected. As we held in *Satilla I*, the hospital has improperly attempted to implement an exclusive agreement without affording the excluded physicians the procedural protections provided by law. We therefore reverse.

In *Satilla I*, the hospital terminated the practice privileges of cardiologists affiliated with DCA (now SHG) and SGCA who were practicing at the hospital before it entered into the agreement with BSP. We held that the trial court did not err in refusing to dissolve an interlocutory injunction or in granting a preliminary injunction, reasoning that "the [h]ospital failed to comply with the procedural protections set forth in *St. Mary's Hosp. [v. Radiology Professional Corp.*, 205 Ga. App. 121 (3) (421 SE2d 731) (1992) (full concurrence in Division 3)] and its progeny in attempting to automatically terminate the [d]octors' clinical privileges." *Satilla I*, 280 Ga. App. at 135 (3).

In *St. Mary's*, we held that the hospital had the authority to establish exclusive relationships in a practice specialty area and could terminate staff privileges in conjunction with that authority. Id. at 126 (3) (b). The hospital, however, also had a legal duty to follow the provisions of its medical staff bylaws with regard to privileges, and it was required to provide for such termination in the bylaws or by contract with the individual physician. Id. at 127-128 (3) (c).

The appeals now before us present somewhat different factual situations. Sonya Lefever and James Grigsby are new employees of

SHG; they applied for initial privileges with Satilla, and their applications were rejected on the basis of the agreement with BSP. They brought this action claiming that the hospital unreasonably discriminates against them by applying the BSP agreement to them while allowing as many as 11 cardiologists unaffiliated with BSP to practice in the hospital. John Madonna, who joined SGCA in September 2005, makes essentially the same argument, but he is not in the same circumstances as Lefever and Grigsby. Madonna initially held hospital privileges as a member of BSP, but he left that practice group and now seeks to obtain hospital privileges as a member of SGCA. At the time of his appointment to the hospital medical staff, Madonna signed a letter stating that "this appointment/privileging is contingent upon your continued relationship with BSP."

### Case No. A08A0082

In denying Lefever and Grigsby's petition for a preliminary injunction, the trial court entered a lengthy order analyzing the petition in the context of *Satilla I* and several other decisions of this court, including *St. Mary's*, supra, and *Alta Anesthesia Assoc. of Ga. v. Gibbons*, 245 Ga. App. 79 (537 SE2d 388) (2000). The portion of *Alta Anesthesia* considered by the trial court held that a contract specifically providing for exceptions to an "exclusive" practice agreement "was not an exclusive services agreement, was not intended to be one, and was not even understood by Alta to be one." Id. at 87 (4). We therefore affirmed the denial of a motion for directed verdict in favor of Alta on the tort action for conspiracy to restrain trade. Id.

After reviewing *St. Mary's* and *Alta Anesthesia*, the trial court in the cases now before us concluded that a valid distinction could be drawn between those physicians who already held staff privileges at the time of implementation of the contract between Satilla and BSP and those who did not. It therefore deferred to the discretion of the hospital board and denied Lefever and Grigsby's petition for preliminary injunction. It distinguished *Alta Anesthesia* on the basis that no "exclusive" agreement was involved in that case and that the agreement here became nonexclusive "only . . . to comply with the court's rulings." The trial court decided that "a hospital board may opt to implement exclusive provider agreements as long as the rights of existing physicians are protected. Such a holding seems to best reconcile the holdings in *St. Mary's*, *Satilla v. Bell, et al.*, and *Alta*, supra."

At the hearing on this matter, the trial court stated its view that the legislature did not want to deal with the issue of exclusive agreements and had left it to the courts to sort out, although "[w]e're just ill-equipped to deal with it." The court was less than enthusiastic

about its ruling: "Actually in a way I hope I am reversed. I may be. I just think it's in a way bad law."

> Generally, the trial court has broad discretion to decide whether to grant or deny an interlocutory injunction. OCGA § 9-5-8. A trial court's discretion in granting or denying an injunction will not be disturbed on appeal as an abuse of discretion unless there was no evidence upon which to base the ruling or it was based on an erroneous interpretation of the law.

(Citations and punctuation omitted.) *Satilla I*, 280 Ga. App. at 127. Here, the trial court frankly acknowledged that it was constrained by what it perceived to be the controlling law. Under these circumstances, we must address whether the trial court's legal analysis was correct. While this decision presents a close question, we find that the trial court misapplied the relevant legal authority, and we therefore reverse.

Lefever and Grigsby rely primarily upon our decision in *Alta Anesthesia*, supra, arguing that under that decision, the hospital's contract with BSP was not an exclusive contract, although it purported or attempted to be one. The hospital counters that *Satilla I* provided an exemption only for existing, or "grandfathered," staff and that *Alta Anesthesia* does not apply because it involved neither an "exclusive" contract nor hospital staff privileges.[1]

But we need not decide whether the hospital's contract is exclusive, because it is apparent from the record that the medical staff bylaws governing the termination of privileges in *Satilla I* are equally applicable to the initial grant or denial of privileges. Article III of the medical staff bylaws, "Medical Staff Membership," the subsection governing "Conditions and Duration of Appointment," provides:

> Initial appointments and reappointments to the Medical Staff shall be made by the Board [of Directors of Satilla Health Services, Inc.]. *The Board shall act on appointments and reappointments only after there has been a recommendation from the Credentials Subcommittee and MEC [Medical Executive Committee].*

---

[1] *Alta Anesthesia,* however, appears to have involved a contract with a practice group which purported to be for "exclusive services" to a hospital. See id., 245 Ga. App. at 80. Moreover, it included a "grandfather" provision for physicians already on staff who did not choose to join the practice group. Id. This court relied on that at least in part to determine that "this contract was not an exclusive services agreement, was not intended to be one, and was not even understood by Alta to be one." Id. at 87 (4).

(Emphasis supplied.) The bylaws further provide:

> Initial requests for privileges are made simultaneously with the filing of the application for Medical Staff membership. Following procedures stated in the Credentials Policy Manual, and with a recommendation of the appropriate Department Chair, the Medical Staff organization will evaluate and make recommendations to the Board.

The issue was framed in terms of terminating existing privileges in *Satilla I* because that was the question before us in that case and in *St. Mary's*, supra. But neither the authorities relied upon in those cases nor the cases themselves makes any distinction between termination and initial grant of privileges:

> With regard to public hospitals, the Supreme Court has recognized that although a physician has no absolute right to practice in a given public hospital, only a privilege, the physician is entitled to practice in the public hospitals as long as he complies with applicable laws, rules, and regulations, and such privileges may not be deprived by rules or acts that are unreasonable, arbitrary, capricious, or discriminatory. Given that hospitals cannot arbitrarily or capriciously deprive physicians of their privileges, the logical inference from this principle is that notwithstanding the broad power of a hospital authority to control the administrative, operational, and managerial functions of the facility and its staff, a public hospital authority cannot abridge or refuse to follow its existing bylaws concerning staff privileges.

> Does the same duty devolve upon private hospitals? We hold that it does. Otherwise, the regulatory mandate that all hospital authorities enact staff bylaws would be meaningless. Since the issue is existence of a legal duty to follow procedures established pursuant to state law, not the presence of state action, we see no reason to distinguish between public and private hospitals in this context. Both are required to establish staff bylaws; therefore, both should be required to follow those bylaws.

(Citations and punctuation omitted.) *Satilla I*, 280 Ga. App. at 128-129, citing *St. Mary's*, supra, 205 Ga. App. at 127 (3) (c). The hospital therefore must abide by its own medical staff bylaws in considering physicians' practice privileges, whether in termination or in an initial application.

This does not mean, as the hospital contends, that no exclusive agreement can ever be enforced. It simply means that the hospital must comply procedurally with its own bylaws in considering the implementation of an exclusive agreement, or amend its bylaws appropriately. Nor does it upset the "delicate balance" between hospital and physicians. It maintains the current balance between the power of the hospital to manage its "administrative, operational, and managerial functions" and the physicians' privilege of practicing medicine and providing hospital care for their patients "as long as [they] compl[y] with applicable laws, rules, and regulations." *Satilla I*, 280 Ga. App. at 128. The trial court therefore erred in denying Lefever's and Grigsby's petition for a preliminary injunction.

### Case No. A07A2142

We next consider the trial court's denial of John Madonna's request for a preliminary injunction. The requirement that the medical staff bylaws be followed in the consideration of privileges applies equally to Madonna. We must, however, additionally consider the effect of a letter agreement with the hospital signed by Madonna upon his employment with BSG, a letter which the trial court held constituted a waiver of any procedural protection under the medical staff bylaws.

As noted in *Satilla I*, "to ensure [their] right to terminate staff privileges to maintain exclusive relationships, hospitals must so provide either in the bylaws *or in a contract with the individual physician* (and not just in the contracts with the physician's professional corporation)." (Citations and punctuation omitted; emphasis supplied.) 280 Ga. App. at 129. The letter agreement provides: "Cardiology services at Satilla Regional Medical Center are provided under an exclusive contract with Baptist Specialty Physicians, Inc. (BSP), therefore; [sic] this appointment/privileging is contingent upon your continued relationship with BSP." The letter agreement additionally provides: "This privileging is subject to all the terms and conditions of the Medical Staff Bylaws, Rules and Regulations and policies of the hospital and medical staff in force during the term of your appointment." But the letter is silent with regard to Madonna's right to reapply for hospital privileges in the future.

Under the medical staff bylaws, rules, and regulations referenced in the letter, even those physicians who have had staff privileges terminated *for cause* may re-apply through the Credentials Subcommittee and the Medical Executive Committee. Nothing in the contract letter between Madonna and the hospital states that he is forever disqualified from reapplying after termination occurs on the basis of the exclusive agreement.

The hospital and the trial court incorrectly concluded that this case is controlled by *St. Mary's Hosp. v. Cohen*, 216 Ga. App. 761 (456 SE2d 79) (1995) (*St. Mary's II*), a successor case to *St. Mary's Hosp. v. Radiology Professional Corp.*, supra (*St. Mary's I*). In *St. Mary's I*, a physician's tort claim against a hospital "for failure to follow existing bylaws with regard to termination of his staff privileges" was allowed to proceed to trial. *St. Mary's I*, 205 Ga. App. at 127-128. In *St. Mary's II*, the hospital appealed from a jury verdict against it in favor of the physician on the tort action. We reversed, holding that the evidence at trial demonstrated that the physician, by signing a letter agreement providing that his privileges would end with his contract with a practice group, waived his right to insist on compliance with the medical staff bylaws and that the trial court erred in failing to direct a verdict for the hospital on his claim for wrongful termination. *St. Mary's II*, 216 Ga. App. at 762-763. Here, in contrast, Madonna does not seek damages because the hospital terminated his medical privileges as allowed by a letter agreement. He seeks instead the right to reapply for privileges in accordance with the medical staff bylaws, a matter not addressed in his agreement with the hospital.

We therefore conclude that Madonna's 2005 letter agreement does not bar his reapplication for privileges at a later date, subject to the appropriate procedural guidelines of the medical staff bylaws. The trial court therefore erred in denying Madonna's request for a preliminary injunction.

*Judgments reversed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 7, 2008.

*Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, John E. Bumgartner, Bradley J. Watkins, Balch & Bingham, Michael J. Bowers, T. Joshua R. Archer*, for appellants.

*Dillard & Dillard, Stephen G. Dillard, Scott C. Crowley, Roy E. Barnes*, for appellee.

*Donald J. Palmisano, Jr., Brian W. Looby, Parker, Hudson, Rainer & Dobbs, Thomas D. Watry, John H. Parker, Jr., Alston & Bird, Angela T. Burnette, Donna P. Bergeson*, amici curiae.