### A03A2028. PARKER v. CLARY LAKES RECREATION ASSOCIATION, INC.
(592 SE2d 880)

PHIPPS, Judge.

Phillip Parker, co-owner of a home and lot in Clary Lakes Subdivision, sued Clary Lakes Recreation Association, Inc., the subdivision's homeowners' association. This is the third appearance of Parker's suit before the appellate courts of Georgia. In the first appearance of the case, the superior court's denial of Parker's request for interlocutory injunctive relief was affirmed.[1] In the second appearance, the superior court's refusal to require the Association to produce certain documents was affirmed.[2] Parker now appeals the entry of final judgment in favor of the Association. Finding no error, we again affirm.

This suit in large part concerns Parker's challenges to the validity of amendments by the Association to the subdivision's protective covenants in 1992 and 1998. The Association was organized as a non-profit corporation by the subdivision developer in 1987. At that time, the developer filed a set of protective covenants for the subdivision. In the original covenants, the developer retained the right to amend the covenants without the necessity of approval of any lot owner until he had sold every lot in the subdivision to bona fide purchasers. The original covenants further provide that any subsequent amendments must be approved by a majority of lot owners of record and that any amendment must be accompanied by a certification of the majority of owners approving the amendment. Any amendment also has to be filed in the office of the clerk of superior court before becoming effective.

In 1988, the subdivision developer filed an amendment to the

[1] *Parker v. Clary Lakes Recreation Assn.*, 272 Ga. 44 (526 SE2d 838) (2000).
[2] *Parker v. Clary Lakes Recreation Assn.*, 243 Ga. App. 681 (534 SE2d 154) (2000).

protective covenants requiring every lot owner to be a member of the Association and to pay a $35 annual assessment for maintenance of the entrance to the subdivision. In November 1991, the developer sold his remaining lots in the subdivision to a third party. At or about the time of the sale, the developer executed an amendment to the subdivision covenants appointing the purchaser as his successor. The amendment was not filed until December 1991.

In March 1992, the developer's successor and the members of the Association filed an amendment to the protective covenants of the subdivision, expanding the authority of the Association. A certification of the consent of the lot owners to the 1992 amendment was not, however, filed until December 1992. The 1992 amendment provides for various types of mandatory and discretionary assessments to be imposed by the Association on lot owners. The subdivision covenants were again amended in 1998. The 1998 amendment was accompanied by a certification of the consent of the lot owners.

Parker acquired a one-half interest in a house and lot in the subdivision by quitclaim deed from his wife in 1996. She purchased the lot in 1992. It is undisputed that she signed the consent of the owners to the 1992 amendment to the protective covenants on behalf of herself and her "successors and assigns." Parker, in fact, witnessed her notarized signature. Other owners of lots in the subdivision testified that they had purchased their property in reliance on the enforceability of the protective covenants.

Parker charged the board of directors and those in control of the Association with a variety of misdeeds. The gravamen of his complaint was that the board was not authorized to enforce restrictive covenants adopted in 1992 and 1998 because the amendment procedures required by the 1987 covenants had not been followed. Among other things, Parker complained that the original developer filed the 1991 amendment after he had sold all of the subdivision lots; the 1992 covenants were not accompanied by a certificate of the majority of owners of record who had approved the covenants; and the "consents" were not filed until after the covenants were filed. Parker's primary complaint was that a majority of lot owners in the subdivision did not in fact consent to the amendments. He based this claim on evidence showing that although numerous lots in the subdivision are jointly owned (by spouses), in many cases only one of the lot owners signed the consents to the covenant amendments. Among other things, Parker sought a declaratory judgment, interlocutory and permanent injunctive relief, dissolution of the corporation, appointment of a receiver, and damages for breach of contract.

After a trial, the superior court entered an order denying Parker's request for a declaratory judgment as to the validity of the 1992 and 1998 restrictive covenants on the ground that such a judg-

ment would constitute an advisory opinion. The court summarily denied Parker's other requests for relief.

1. Parker first complains of the superior court's refusal to issue a judgment declaring the 1992 and 1998 covenant amendments invalid.

> A declaratory judgment is authorized when there are circumstances showing [a] necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.[3]

If an action presents only a question of academic interest rather than a justiciable controversy, "the entry of declaratory judgment is not appropriate, because a court has no province to give advisory opinions."[4]

Even if the amendments to the covenants were invalid on any of the grounds urged by Parker, he is bound by them because his wife, with his knowledge, consented to them before she quitclaimed the one-half interest in her lot to him, and other lot owners who also consented to the amendments have relied on the enforceability of the covenants to their detriment.[5] Therefore, the superior court did not err in refusing to issue a declaratory judgment concerning the merit of Parker's various challenges to the validity of the covenants.[6]

2. Parker contends that the superior court erred in refusing to dissolve the Association.

OCGA § 14-3-1430 sets forth the grounds for judicial dissolution

---

[3] (Punctuation and footnote omitted.) *Glynn-Brunswick Mem. Hosp. Auth. v. Gibbons*, 243 Ga. App. 341, 344-345 (1) (530 SE2d 736) (2000).

[4] (Citation, punctuation and footnote omitted.) Id. at 345.

[5] See *Bowman v. Walnut Mountain Property Owners Assn.*, 251 Ga. App. 91, 93 (1) (a) (553 SE2d 389) (2001) (physical precedent only) (promissory estoppel would prevent party from disavowing what its predecessors in title agreed to do and caused other lot owners to mutually rely upon to their detriment); *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 428 (2) (532 SE2d 736) (2000) (under principle of promissory estoppel, renewed restrictive covenants enforceable against landowners who agreed to renewal even though statutory requirements for renewal not complied with); *McLean v. Turtle Cove Property Assn.*, 222 Ga. App. 709, 710 (1) (475 SE2d 718) (1996) (restrictive covenants may apply to subdivision lots under an implied covenant theory even if all formalities are not complied with, as long as landowner had knowledge of restrictive covenants when he purchased the property).

[6] Compare *Rowland v. Kellos*, 236 Ga. 799 (225 SE2d 302) (1976) (declaratory judgment action by subdivision property owner claiming that subdivision's restrictive covenants had expired by operation of Georgia statutory law); *Duffy v. The Landings Assn.*, 245 Ga. App. 104 (536 SE2d 758) (2000) (landowners entitled to a judgment declaring legally ineffective subdivision covenants invalid where landowners had never agreed to covenants).

of corporations.[7] In pertinent part, it authorizes a superior court to dissolve a corporation in a proceeding by a member if it is established that the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal or fraudulent in connection with the operation or management of the business and affairs of the corporation[8] or that the corporate assets are being misapplied or wasted.[9]

Parker claims that the superior court should have dissolved the Association because of evidence showing that the Association has lost its status as a nonprofit corporation, failed to properly file tax returns, collected assessments without legal authority, spent money for purposes unauthorized by the covenants, and failed to follow proper procedure for notice of meetings.

The references to the record provided by Parker do not, however, establish that the Association failed to file proper tax returns or follow proper procedures for notice of meetings. Although Parker has shown by the record that the Internal Revenue Service issued a preliminary denial of the Association's application to qualify as a tax-exempt organization due to its failure to provide adequate information, the Association presented evidence that its tax-exempt status was ultimately granted and that, in any event, it files tax returns as a residential association. The record shows that although Parker complained about the Association making various expenditures not authorized by the protective covenants and bylaws, it stopped making all such expenditures except two, one of which it claimed was authorized. Parker's argument — that where two persons jointly own a subdivision lot, both must consent to an amendment of restrictive covenants applicable to the subdivision — finds no support in either Georgia law or in the Association's bylaws. The Georgia Property Owners' Association Act (GPOAA) provides that if only one of multiple persons owning a lot is present at a meeting of the property owners' association, that person is entitled to cast votes pertaining to that lot.[10] Although it does not appear that Clary Lakes Subdivision has been submitted to the GPOAA,[11] the Association bylaws similarly provide that where spouses have joint membership in the Associa-

---

[7] *Cook v. Regional Communications*, 244 Ga. App. 869, 870 (539 SE2d 171) (2000).

[8] OCGA § 14-3-1430 (2) (B).

[9] OCGA § 14-3-1430 (2) (D). OCGA § 14-3-1430 (2) (A) and (C) also authorize judicial dissolution due to director or shareholder deadlock. See also *Indus. Distrib. Group v. Waite*, 268 Ga. 115 (485 SE2d 792) (1997) (suit by shareholders for dissolution of a business corporation under cognate provisions of OCGA § 14-2-1430).

[10] OCGA § 44-3-224 (a); see also OCGA § 44-5-60 (d) (4) (no change in covenants which imposes a greater restriction on land use or development will be enforced unless agreed to in writing by "owner" of affected property at time change is made).

[11] See OCGA §§ 44-3-222; 44-3-235.

tion, it shall be presumed that the vote of one represents the vote of the other.

"Statutes that authorize the dissolution of a corporation for fraud or mismanagement have been construed as providing the courts with discretionary authority to order this relief. . . ."[12] The superior court did not abuse its discretion in finding the evidence insufficient to warrant dissolution of the Association here.

3. Parker also complains of the superior court's refusal to grant his requests for permanent injunction and various other relief. Again, the citations to the record provided by Parker in his appellate brief do not support this claim of error.

4. Finally, Parker contends that the superior court erred in denying his request for attorney fees under OCGA § 13-6-11. This contention is without merit, because a party cannot receive attorney fees under OCGA § 13-6-11 unless he prevails on his basic cause of action.[13]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 8, 2004.

*Austin & Sparks, John T. Sparks, Alfred L. Evans III*, for appellant.

*Temple, Strickland, Dinges & Schwartz, William A. Dinges, Jason B. Schwartz*, for appellee.

---

[12] (Footnote omitted.) 19 AmJur2d, Corporations, § 2765, p. 568 (1986).
[13] *Dept. of Transp. v. Ga. Television Co.*, 244 Ga. App. 750, 753 (2) (536 SE2d 773) (2000).